Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
FORSHEY & PROSTOK, L.L.P.
777 Main Street, Suite 1290
Fort Worth, Texas 76102
(817) 877-8855 ● (817) 877-4151 Fax
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
llankford@forsheyprostok.com

ATTORNEYS FOR ORIGIN BANK

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 19-31484-sgj11 |
| | § | |
| THE LASALLE GROUP, INC., et al.[1] | § | Chapter 11 |
| | § | |
| Debtor. | § | |
| | § | |

**AGREED MOTION PURSUANT TO BANKRUPTCY RULE 4001(d)
FOR ORDER GRANTING ORIGIN BANK RELIEF FROM AUTOMATIC STAY
TO PROCEED WITH LITIGATION AGAINST NON-DEBTOR PARTIES**

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1452, DALLAS, TEXAS 75242 BEFORE CLOSE OF BUSINESS ON AUGUST 30, 2019, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF.  A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE.    ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: The LaSalle Group, Inc. (0143); West Houston Memory Care, LLC (2760); Cinco Ranch Memory Care, LLC (2716); Pearland Memory Care, LLC (5311); and Riverstone Memory Care, LLC (5407).

TO THE HONORABLE STACEY G.C. JERNIGAN, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Origin Bank ("Origin"), a creditor and party in interest in the above-referenced case, and hereby files this *Agreed Motion Pursuant to Bankruptcy Rule 4001(d) for Order Granting Origin Bank Relief from Automatic Stay to Proceed with Litigation Against Non-Debtor Parties* (the "Motion"). In support of the Motion, Origin would respectfully show the Court as follows:

## I. STATEMENT PURSUANT TO BANKRUPTCY RULE 4001(d)(1)(B)

1.      By this Motion, Origin seeks entry of the Agreed Order attached hereto as **Exhibit A** (the "Agreed Order"), which has been agreed to by counsel for Debtors.  The proposed Agreed Order grants Origin relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code as to debtors The LaSalle Group, Inc. ("LaSalle") and West Houston Memory Care, LLC ("West Houston", and with LaSalle, the "Debtors") to permit Origin to proceed with litigation against the non-debtor parties Lake Superior Contracting, L.P., Mitchell Warren and Melvin Warren (the "Non-Debtor Defendants").

2.      Specifically, paragraph 2 of the Agreed Order makes clear that the automatic stay is modified to permit Origin to proceed in the State Court Lawsuit (defined below) against the Non-Debtor Defendants.  The Agreed Order makes clear that the stay is not modified as to the Debtors and that any findings of liability against the Non-Debtor Defendants in the State Court Lawsuit shall not be binding on the Debtors.  The Agreed Order further provides that the stay is modified to permit Origin to file any and all appropriate pleadings and to permit the State Court (defined below) to enter any and all appropriate orders in order to permit Origin to proceed against the Non-Debtor Defendants, including without limitation, all such pleadings and orders to reinstate the State Court Lawsuit to the State's Court's active docket, and all such pleadings and orders to sever or nonsuit the Debtors from the State Court Lawsuit so that Origin may proceed against the Non-Debtor Defendants.  The Agreed Order further provides at paragraph 3 that the stay pursuant to Bankruptcy Rule 4001(a)(3) is waived so that the terms of

the Agreed Order may be immediately enforced and implemented.

## II. <u>JURISDICTION</u>

3.        The Court has jurisdiction pursuant to 28 U.S.C. § 1334.  These bankruptcy cases and all related proceedings have been referred to this Court pursuant to 28 U.S.C. § 157. This matter constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court has full constitutional jurisdiction to enter a final order on this Motion.

## III. <u>BACKGROUND</u>

4.        On May 2, 2019 (the "<u>Petition Date</u>"), LaSalle Group and West Houston filed voluntary petitions commencing separate bankruptcy cases under chapter 11 of the Bankruptcy Code.[2]  The Debtors continue to operate their businesses as a debtor-in-possession.

5.        Before the commencement of these chapter 11 cases, Origin was the plaintiff in the State Court Lawsuit, described below, against two of the Debtors herein and three non-debtor parties.  By this Motion, Origin requests relief from the automatic stay so that Origin may sever or nonsuit the two Debtors in the litigation and proceed to prosecute its claims only against the three non-debtors.  Such relief would not prejudice the Debtors in any way, and in fact, counsel for the Debtors has agreed to entry of the Agreed Order granting such relief.

6.        Origin made the following three loans at issue herein:

- A loan to Lake Superior Contracting, LP, current principal of $3,722,989.77, and maturity date January 1, 2020 (the "<u>LSC Loan</u>");

- A loan to The LaSalle Group, Inc., current principal of $3,722,989.77, and maturity date January 1, 2020 (the "<u>LaSalle Loan</u>"); and

- A loan to West Houston Memory Care, LLC, principal $7,753,335.15, and maturity date December 31, 2018 (the "<u>WHMC Loan</u>").

The modified notes at issue are attached hereto as **<u>Exhibits 1, 2 and 3</u>** respectively and by reference made a part hereof.

---

[2] The Debtors' bankruptcy cases are being jointly administered under lead case, The LaSalle Group, Inc., Case No. 19-31484-sgj11.  The West Houston bankruptcy case is assigned Case No. 19-31485-sgj11.

7.      LaSalle is directly obligated on the LaSalle Loan and is obligated as a guarantor for the LSC Loan and WHMC Loan.  All three loans were guaranteed by Melvin W. Warren, Jr. ("Melvin"), and Mitchell W. Warren ("Mitchell").  The Agreement of Guarantors is attached as **Exhibit 4** and by reference made a part hereof.  Melvin and Mitchell are collectively referred to as the "Non-Debtor Guarantors" throughout this Motion.

8.      In a lawsuit filed on September 21, 2018, Origin asserted claims against LaSalle, West Houston, Lake Superior Contracting, LP, and the Non-Debtor Guarantors in the 101st Judicial District Court, Dallas County, Texas (the "State Court"), Cause No. DC-18-14477, styled as *Origin Bancorp, Inc., dba Origin Bank v. The LaSalle Group, Inc., West Houston Memory Care, LLC, Lake Superior Contracting, L.P., Mitchell Warren, and Melvin Warren* (the "State Court Lawsuit").  Origin's First Amended Petition is attached as **Exhibit No. 5** and by reference made a part hereof.

9.      Prior to trial, LaSalle and West Houston filed the present bankruptcy case. LaSalle filed its Suggestion of Bankruptcy in the State Court Lawsuit on the same day.

10.      Lake Superior, Melvin and Mitchell (collectively, the "Non-Debtor Defendants") have not filed for bankruptcy relief.

11.      On June 17, 2019, Origin filed *Plaintiff's Motion to Sever Claims Against The LaSalle Group, Inc. and West Houston Memory Care, LLC Because They are in Bankruptcy* (the "Motion to Sever").  The Motion to Sever is attached as **Exhibit No. 6** and by reference made a part hereof.  The purpose of the Motion to Sever was to separate LaSalle and West Houston from the active proceedings and allow Origin to pursue its claims against the Non-Debtor Defendants.

12.      On August 1, 2019, the State Court denied the Motion to Sever.  The Order from the State Court is attached as **Exhibit No. 7** and by reference made a part hereof.

13.      While Origin contends that the automatic stay does not prevent the State Court from permitting Origin to proceed against the Non-Debtor Defendants, the State Court has

plainly questioned whether it has that authority at the urging of the Non-Debtor Defendants. The Agreed Order is intended to clarify that, to the extent the automatic stay applies, it will be modified to allow Origin to proceed against the Non-Debtor Defendants.

14.     Origin seeks entry of the Agreed Order to make clear that the automatic stay provisions of section 362(a) of the Bankruptcy Code are modified to permit Origin to proceed against the Non-Debtor Defendants and for the State Court to enter appropriate orders to effectuate this result.  To be clear, Origin is not seeking authority to proceed with claims against LaSalle or West Houston.  This Motion is filed *only* for the purpose of allowing Origin to proceed with claims against the Non-Debtor Defendants.

## IV.  ARGUMENT AND AUTHORITIES

15.     Cause exists for relief from the automatic stay. 11 U.S.C. § 362(d)(1).  The automatic stay applies only to actions against the debtor.  *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983).  It is not a violation of the automatic stay for a plaintiff to proceed against co-defendants that did not file for bankruptcy.  *Id.*  Moreover, the automatic stay does not preclude a plaintiff from pursuing its claims against non-bankruptcy parties.  *Id.*

16.     Here, while LaSalle and West Houston have filed for bankruptcy, there are other defendants that are liable to Origin for its claims.  Allowing Origin to pursue these claims would not be a violation of the bankruptcy stay.  *Id.*  However, refusing to grant relief from stay to sever or nonsuit LaSalle and West Houston would effectively prohibit Origin from pursuing its claims against the Non-Debtor Defendants, even though they have not sought bankruptcy court protection.

17.     The relief requested in the Motion has been agreed to by the Debtors. Accordingly, the fourteen-day stay provided by Federal Rule of Bankruptcy Procedure 4001(a)(3) should be waived and Origin should be permitted to immediately enforce and implement the Agreed Order.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Origin Bank respectfully requests that the

Court (a) grant the Motion, (b) enter the Agreed Order attached hereto as **Exhibit A** so that

Origin may proceed against the Non-Debtor Defendants in the State Court Lawsuit, and (c)

grant such other and further relief to which Origin may show itself to be justly entitled.

DATED: August 16, 2019.                    Respectfully Submitted,

/s/ Jeff P. Prostok
Jeff P. Prostok
State Bar No. 16352500
J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1290
Fort Worth, TX 76102
(817) 877-8855 ● (817) 877-4151 fax
jprostok@forsheyprostok.com
bforshey@forsheyprostok.com
llankford@forsheyprostok.com

ATTORNEYS FOR ORIGIN BANK

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on August 16, 2019, she communicated with Debtors' counsel, Vickie L. Driver, concerning this Motion. Ms. Driver has confirmed that she agrees to entry of the Agreed Order on behalf of the Debtors.

/s/ Lynda L. Lankford

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2019 a copy of the foregoing document (with all exhibits) was served upon the parties receiving ECF notification and with Exhibit A to the parties on the attached service list via first class, U.S. mail, postage prepaid. Exhibits 1 through 7 are voluminous, but if any party wishes to receive a copy, please email Linda Breedlove at lbreedlove@forsheyprostok.com to request them.

/s/ Lynda L. Lankford

L:\JPROSTOK\Origin Bank (LaSalle Group) (CrR) #6029\Pleadings 19-31484-sgj11\Agreed Motion (Rule 4001(d)) Granting Relief from Stay 8.16.19.docx

# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **THE LASALLE GROUP, INC.,** *et al.,* [1] | § | Case No. 19-31484-sgj11 |
| | § | |
| Debtors. | § | |

**AGREED ORDER PURSUANT TO BANKRUPTCY RULE 4001(d)**
**GRANTING ORIGIN BANK RELIEF FROM AUTOMATIC STAY**
**TO PROCEED WITH LITIGATION AGAINST NON-DEBTOR PARTIES**
[Relates to Docket No. ___]

On this day, the Court considered the *Agreed Motion Pursuant to Bankruptcy Rule*

*4001(d) for Order Granting Origin Bank Relief From Automatic Stay to Proceed with Litigation*

*Against Non-Debtor Parties* [Docket No. _____] ("Motion") [2] filed by Origin Bank ("Origin") in

relation to The LaSalle Group, Inc. and West Houston Memory Care, LLC (the "Debtors"). The

Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: The LaSalle Group, Inc. (0143); West Houston Memory Care, LLC (2760); Cinco Ranch Memory Care, LLC (2716); Pearland Memory Care, LLC (5311); and Riverstone Memory Care, LLC (5407).

[2] Capitalized terms not otherwise defined in this Order shall have the meaning ascribed to such terms in the Motion.

---

§§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) proper and adequate notice of the Motion has been given and no other or further notice is necessary; and that (iv) based upon the record herein and the representations and agreements of the parties, as reflected by the signature of counsel below, and after due deliberation and consideration thereof, good cause exists for the granting of the relief as set forth herein.

THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The automatic stay provisions of section 362(a) of the Bankruptcy Code are hereby modified to permit Origin to proceed in the State Court Lawsuit against the Non-Debtor Defendants (Lake Superior Contracting, L.P, Mitchell Warren and Melvin Warren); provided, however, that nothing herein impacts the stay as to the Debtors and any findings of liability against the Non-Debtor Defendants in the State Court Lawsuit shall not be binding on the Debtors. Without limiting the generality of the foregoing, the stay is modified to permit Origin to file any and all appropriate pleadings and to permit the State Court to enter any and all appropriate orders in order to permit Origin to proceed against the Non-Debtor Defendants, including without limitation, all such pleadings and orders to reinstate the State Court Lawsuit to the State's Court's active docket, and all such pleadings and orders to sever or nonsuit the Debtors from the State Court Lawsuit so that Origin may proceed against the Non-Debtor Defendants.

3.      The fourteen-day stay provided by Federal Rule of Bankruptcy Procedure 4001(a)(3) is waived allowing the terms of this Order to be immediately enforced and implemented.

4.      This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

### ### END OF ORDER ###

**AGREED**:

/s/ Lynda L. Lankford
J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1290
Fort Worth, TX 76102
Telephone: 817.877-8855
Facsimile: 817.877.4151
bforshey@forsheyprostok.com
llankford@forsheyprostok.com

**ATTORNEYS FOR ORIGIN BANK**

/s/ Vickie L. Driver
Vickie L. Driver
State Bar No. 24026886
Christina W. Stephenson
State Bar No. 24049535
Christopher M. Staine
State Bar No. 24104576
Crowe & Dunlevy, P.C.
1919 McKinney Avenue, Suite 100
Dallas, TX 75201
Telephone: 214.420.2163
Facsimile: 214.736.1762
vickie.driver@crowedunlevy.com
christina.stephenson@crowedunlevy.com
christopher.staine@crowedunlevy.com

**ATTORNEYS FOR DEBTORS**

L:\JPROSTOK\Origin Bank (LaSalle Group) (CrR) #6029\Pleadings 19-31484-sgj11\Agreed Order granting Origin's Motion for Relief 8.14.19.docx

# Exhibit 1

MODIFICATION AND EXTENSION
OF PROMISSORY NOTE

NOTE #7319182-10001

---

THAT, LAKE SUPERIOR CONTRACTING, L.P., a Texas limited partnership (herein called "Borrower"), being legally obligated to pay the hereinafter described Promissory Note (the "Note") and who, if not presently primarily liable for the payment of the Note, does hereby expressly assume the payment thereof, the Note being in the original principal sum of FOUR MILLION AND NO/100 DOLLARS ($4,000,000.00) dated June 30, 2015, executed by the Borrower, payable to the order of COMMUNITY TRUST BANK, now known as ORIGIN BANK, the Note being secured by the liens created or mentioned in a Commercial Security Agreement of even date therewith (the "Security Agreement"), additionally described in and controlled by that certain Business Loan Agreement of even date therewith ("Loan Agreement"), the Note being guaranteed by THE LASALLE GROUP, INC., a Texas corporation, MELVIN W. WARREN, JR. and MITCHELL W. WARREN ("Guarantor", whether one or more) pursuant to those certain Guaranty Agreements dated effective as of December 31, 2016 (collectively the "Guaranty Agreement"), the Note having been previously modified, renewed and/or extended, the Note, Security Agreement, Loan Agreement, Guaranty Agreement, and all other documents evidencing or delivered in connection with the loan are collectively referred to herein as the ("Loan Documents"), and who now desires to extend, modify or rearrange the time or manner of payment of the Note and to extend and carry forward said liens on said collateral; and

WHEREAS, ORIGIN BANK (herein called "Lender"), the legal owner and holder of the Note and of the liens securing the same, in consideration of good and other valuable consideration and at the request of the Borrower, has agreed to extend, modify or rearrange the time or manner of payment of the Note as hereinafter provided (this "Modification");

NOW, THEREFORE, in consideration of the extension, modification or rearrangement of the time or manner of payment of the Note as hereinafter set forth by the legal owner and holder thereof, the Borrower hereby renews the Note and indebtedness and promises to pay to the order of Lender the current principal balance of THREE MILLION SEVEN HUNDRED TWENTY-TWO THOUSAND NINE HUNDRED EIGHTY-NINE AND 77/100 DOLLARS ($3,722,989.77), together with interest thereon at the interest rate set forth in the Note, payable on demand, or if no demand is made, as follows:

The interest thereon shall be due and payable monthly as it accrues, with the first of such monthly interest installments being due and payable on April 5, 2018, and with a like installment of interest being due and payable on the 5th business day of each succeeding calendar month thereafter until January 1, 2020 (the "Maturity Date"). Quarterly principal payments shall be due and payable on the following listed dates and in the amounts listed below:

July 1, 2018 - $125,000.00
October 1, 2018 - $125,000.00
January 1, 2019 - $150,000.00
April 1, 2019 - $150,000.00
July 1, 2019 - $175,000.00
October 1, 2019 - $175,000.00

The remaining principal thereon shall be due and payable on or before the Maturity Date at which time all outstanding principal and interest shall be finally due and payable. The failure to make any payment required hereunder shall be an Event of Default (as defined in the Loan Documents). Upon the occurrence of an Event of Default, Lender will be entitled to pursue such remedies as provided for in the Loan Documents without any notice or opportunity to cure, such notice and opportunity to cure being expressly waived by Borrower.

Notwithstanding anything contained in the Loan Documents to the contrary, Borrower reserves the right to prepay the outstanding principal balance of the Note, in whole or in part, at any time and from time to time, without premium or penalty.

The parties hereto hereby extend said liens on said collateral until said indebtedness and Note as so renewed and extended have been fully paid, and agree that such extension or rearrangement shall in no manner affect or impair the Note or the liens securing the same and that said liens shall not in any manner be waived, the purpose of this instrument being simply to extend, modify or rearrange the time or manner of payment of the Note and indebtedness and to carry forward all liens securing the same, which are acknowledged by the parties to be valid and subsisting, and the parties further agree that all terms and provisions of said original Note and of the instrument or instruments creating or fixing the liens securing the same shall be and remain in full force and effect as therein written, except as otherwise expressly provided herein.

The Borrower and the Guarantor (herein collectively referred to as the "Obligors") hereby represent and warrant to Lender that the Obligors do not have any claims or offsets against, or defenses or counterclaims to, the terms and provisions of the Loan Documents. Nevertheless, to the extent any determination or assertion is hereafter made that the Obligors have any such claims, offsets, defenses or counterclaims, whether or not now known, anticipated or suspected, fixed, contingent or conditional, at law or in equity (including, but not limited to, the exercise of any rights and remedies under this Modification or the Loan Documents, or the negotiation, execution or delivery of this Modification or any other Loan Documents), the Obligors hereby waive and hereby release Lender, its predecessors, successors and assigns, its parents, subsidiaries and affiliates, agents, counsel, trustees, servicers, beneficiaries, certificate holders of Lender, and the officers, directors, shareholders, partners, employees, attorneys and agents of each of the foregoing (collectively, the "Released Parties") from any and all such claims, offsets, defenses and counterclaims, such waiver and release being with full knowledge and understanding of the circumstances and effects of such waiver and release and after having consulted counsel with respect thereto.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, BORROWER UNCONDITIONALLY WAIVES (A) ALL RIGHTS, REMEDIES, CLAIMS AND DEFENSES

BASED UPON OR RELATED TO <u>SECTIONS 51.003</u>, <u>51.004</u> AND <u>51.005</u> OF THE TEXAS PROPERTY CODE, TO THE EXTENT THE SAME PERTAIN OR MAY PERTAIN TO ANY ENFORCEMENT OF THE NOTE AND/OR GUARANTY; AND (B) ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY HOLDER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF ANY OF THE LOAN DOCUMENTS.

EFFECTIVE March 31, 2018.

BORROWER:

LAKE SUPERIOR CONTRACTING, L.P.
a Texas limited partnership

By:     LAKE SUPERIOR MANAGEMENT, LLC
        a Texas limited liability company
        General Partner

        By:  THE LASALLE GROUP, INC.
             a Texas corporation
             Sole Member

             By:  _____
                  Randal P. Brown
                  Chief Financial Officer


GUARANTOR:

THE LASALLE GROUP, INC.
a Texas corporation

By:  _____
     Randal P. Brown
     Chief Financial Officer

_____
MITCHELL W. WARREN

_____
MELVIN W. WARREN, JR.

ACCEPTED AND AGREED TO:

ORIGIN BANK

By: _____
Randy Impson
Senior Vice President

STATE OF ___Texas___    §

COUNTY OF ___Dallas___   §
                          §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Randal P. Brown, Chief Financial Officer of THE LASALLE GROUP, INC., a Texas corporation, Sole Member of LAKE SUPERIOR MANAGEMENT, LLC, a Texas limited liability company, General Partner of LAKE SUPERIOR CONTRACTING, L.P., a Texas limited partnership, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this ___11___ day of April, 2018

SONIA R MOLINA
Notary ID #126522397
My Commission Expires
April 5, 2021

_____
Notary Public, State of ___Texas___

STATE OF ___Texas___    §

COUNTY OF ___Dallas___   §
                          §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Randal P. Brown, Chief Financial Officer of THE LASALLE GROUP, INC., a Texas corporation, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this ___11___ day of April, 2018

SONIA R MOLINA
Notary ID #126522397
My Commission Expires
April 5, 2021

_____
Notary Public, State of ___Texas___

STATE OF <u>Texas</u> §
COUNTY OF <u>Dallas</u> §
§

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared MITCHELL W. WARREN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this __11__ day of April, 2018



SONIA R MOLINA
Notary ID #126522397
My Commission Expires
April 5, 2021

Notary Public, State of _____

STATE OF <u>Texas</u> §
COUNTY OF <u>Dallas</u> §
§

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared MELVIN W. WARREN, JR., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this __11__ day of April, 2018

SONIA R MOLINA
Notary ID #126522397
My Commission Expires
April 5, 2021

Notary Public, State of <u>Texas</u>

STATE OF <u>Louisiana</u> §
<s>COUNTY</s> PARISH OF <u>Ouachita</u> §
§

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Randy Impson, Senior Vice President of ORIGIN BANK, and acknowledged to me that he executed the foregoing instrument on behalf of said banking institution for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this __12TH__ day of April, 2018.



Bryan L. Burgess
Notary Public
LSBA No. 20132
Ouachita Parish, Louisiana

Notary Public, State of <u>Louisiana</u>

# Exhibit 2

MODIFICATION AND EXTENSION
OF PROMISSORY NOTE

NOTE#7319195-10001

---

THAT, THE LASALLE GROUP, INC., a Texas corporation (herein called "Borrower"), being legally obligated to pay the hereinafter described Promissory Note (the "Note") and who, if not presently primarily liable for the payment of the Note, does hereby expressly assume the payment thereof, the Note being in the original principal sum of FOUR MILLION AND NO/100 DOLLARS ($4,000,000.00) dated June 30, 2015, executed by the Borrower, payable to the order of COMMUNITY TRUST BANK, now known as ORIGIN BANK, the Note being secured by the liens created or mentioned in a Commercial Security Agreement of even date therewith (the "Security Agreement"), additionally described in and controlled by that certain Business Loan Agreement of even date therewith ("Loan Agreement"), the Note being guaranteed by MELVIN W. WARREN, JR. and MITCHELL W. WARREN ("Guarantor", whether one or more) pursuant to those certain Guaranty Agreements dated effective as of December 31, 2016 (collectively the "Guaranty Agreement"), the Note having been previously modified, renewed and/or extended, the Note, Security Agreement, Loan Agreement, Guaranty Agreement, and all other documents evidencing or delivered in connection with the loan are collectively referred to herein as the ("Loan Documents"), and who now desires to extend, modify or rearrange the time or manner of payment of the Note and to extend and carry forward said liens on said collateral; and

WHEREAS, ORIGIN BANK (herein called "Lender"), the legal owner and holder of the Note and of the liens securing the same, in consideration of good and other valuable consideration and at the request of the Borrower, has agreed to extend, modify or rearrange the time or manner of payment of the Note as hereinafter provided (this "Modification");

NOW, THEREFORE, in consideration of the extension, modification or rearrangement of the time or manner of payment of the Note as hereinafter set forth by the legal owner and holder thereof, the Borrower hereby renews the Note and indebtedness and promises to pay to the order of Lender the current principal balance of THREE MILLION SEVEN HUNDRED TWENTY-TWO THOUSAND NINE HUNDRED EIGHTY-NINE AND 77/100 DOLLARS ($3,722,989.77), together with interest thereon at the interest rate set forth in the Note, payable on demand, or if no demand is made, as follows:

The interest thereon shall be due and payable monthly as it accrues, with the first of such monthly interest installments being due and payable on April 5, 2018, and with a like installment of interest being due and payable on the 5th business day of each succeeding calendar month thereafter until January 1, 2020 (the "Maturity Date"). Quarterly principal payments shall be due and payable on the following listed dates and in the amounts listed below:

July 1, 2018 - $125,000.00
October 1, 2018 - $125,000.00
January 1, 2019 - $150,000.00
April 1, 2019 - $150,000.00
July 1, 2019 - $175,000.00
October 1, 2019 - $175,000.00

The remaining principal thereon shall be due and payable on or before the Maturity Date at which time all outstanding principal and interest shall be finally due and payable. The failure to make any payment required hereunder shall be an Event of Default (as defined in the Loan Documents). Upon the occurrence of an Event of Default, Lender will be entitled to pursue such remedies as provided for in the Loan Documents without any notice or opportunity to cure, such notice and opportunity to cure being expressly waived by Borrower.

Notwithstanding anything contained in the Loan Documents to the contrary, Borrower reserves the right to prepay the outstanding principal balance of the Note, in whole or in part, at any time and from time to time, without premium or penalty.

The parties hereto hereby extend said liens on said collateral until said indebtedness and Note as so renewed and extended have been fully paid, and agree that such extension or rearrangement shall in no manner affect or impair the Note or the liens securing the same and that said liens shall not in any manner be waived, the purpose of this instrument being simply to extend, modify or rearrange the time or manner of payment of the Note and indebtedness and to carry forward all liens securing the same, which are acknowledged by the parties to be valid and subsisting, and the parties further agree that all terms and provisions of said original Note and of the instrument or instruments creating or fixing the liens securing the same shall be and remain in full force and effect as therein written, except as otherwise expressly provided herein.

The Borrower and the Guarantor (herein collectively referred to as the "Obligors") hereby represent and warrant to Lender that the Obligors do not have any claims or offsets against, or defenses or counterclaims to, the terms and provisions of the Loan Documents. Nevertheless, to the extent any determination or assertion is hereafter made that the Obligors have any such claims, offsets, defenses or counterclaims, whether or not now known, anticipated or suspected, fixed, contingent or conditional, at law or in equity (including, but not limited to, the exercise of any rights and remedies under this Modification or the Loan Documents, or the negotiation, execution or delivery of this Modification or any other Loan Documents), the Obligors hereby waive and hereby release Lender, its predecessors, successors and assigns, its parents, subsidiaries and affiliates, agents, counsel, trustees, servicers, beneficiaries, certificate holders of Lender, and the officers, directors, shareholders, partners, employees, attorneys and agents of each of the foregoing (collectively, the "Released Parties") from any and all such claims, offsets, defenses and counterclaims, such waiver and release being with full knowledge and understanding of the circumstances and effects of such waiver and release and after having consulted counsel with respect thereto.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, BORROWER UNCONDITIONALLY WAIVES (A) ALL RIGHTS, REMEDIES, CLAIMS AND DEFENSES

BASED UPON OR RELATED TO <u>SECTIONS 51.003</u>, <u>51.004</u> AND <u>51.005</u> OF THE TEXAS PROPERTY CODE, TO THE EXTENT THE SAME PERTAIN OR MAY PERTAIN TO ANY ENFORCEMENT OF THE NOTE AND/OR GUARANTY; AND (B) ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY HOLDER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF ANY OF THE LOAN DOCUMENTS.

EFFECTIVE March 31, 2018.

BORROWER:

THE LASALLE GROUP, INC.
a Texas corporation

By: _____
     Randal P. Brown
     Chief Financial Officer, Vice President of
     Accounting and Treasurer

GUARANTOR:

_____
MITCHELL W. WARREN

_____
MELVIN W. WARREN, JR.

LENDER:

ORIGIN BANK

By: _____
     Randy Impson
     Senior Vice President

STATE OF _Texas_ §
§
COUNTY OF _Dalla_ §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Randal P. Brown, Chief Financial Officer of THE LASALLE GROUP, INC., a Texas corporation, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this ___ll___ day of April, 2018



Notary Public, State of _Texas_

STATE OF _Texas_ §
§
COUNTY OF _Dalla_ §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared MITCHELL W. WARREN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this ___ll___ day of April, 2018



Notary Public, State of _Texas_

STATE OF _Texas_ §
§
COUNTY OF _Dallas_ §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared MELVIN W. WARREN, JR., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this ___ll___ day of April, 2018



Notary Public, State of _Texas_

STATE OF _LOUISIANA_ §
~~PARISH~~ §
~~COUNTY~~ OF _OUACHITA_ §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Randy Impson, Senior Vice President of ORIGIN BANK, and acknowledged to me that he executed the foregoing instrument on behalf of said banking institution for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _12TH_ day of April, 2018.



Bryan L. Burgess
Notary Public
LSBA No. 20132
Ouachita Parish, Louisiana

Notary Public, State of ~~Texas~~ _Louisiana_

# Exhibit 3

MODIFICATION
OF REAL ESTATE LIEN AND NOTE

THAT, WEST HOUSTON MEMORY CARE, LLC, a Delaware limited liability company (herein called "Borrower"), being legally obligated to pay the hereinafter described promissory note (the "Note") and who, if not presently primarily liable for the payment of the Note, does hereby expressly assume the payment thereof, the Note being in the original principal sum of EIGHT MILLION FIVE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($8,550,000.00) dated July 6, 2012, executed by the Borrower, payable to the order of COMMUNITY TRUST BANK, now known as ORIGIN BANK, more fully described in a Construction Deed of Trust of even date therewith, duly recorded under Instrument No. 20120315682, Official Public Records, Harris County, Texas (the "Deed of Trust"), additionally described in and controlled by that certain Construction Loan Agreement of even date therewith ("Loan Agreement"), the Note being guaranteed by MITCHELL W. WARREN, MELVIN W. WARREN, JR. and THE LASALLE GROUP, INC., a Texas corporation ("Guarantor", whether one or more) pursuant to those certain Commercial Guaranty agreements of even date therewith (collectively the "Guaranty Agreement"), the Note having been previously modified and/or extended, the Note, Deed of Trust, Loan Agreement, Guaranty Agreement, and all other documents evidencing or delivered in connection with the loan are collectively referred to herein as the ("Loan Documents"), are secured by the liens therein created or mentioned against the following described property, to-wit:

> Being 2.613 acres of land, more or less, in the Joel Weaton Survey, A-80 Harris County, Texas, and being a portion of Unrestricted Reserve "A" of CRESCENT AT PARKWAY, according to the map or plat thereof recorded under Film Code No. 458147 of the Map Records of Harris County, Texas, and being more particularly described by metes and bounds on Exhibit "A" attached hereto (the "Property");

and who now desires to modify or rearrange the time or manner of payment of the Note and to extend and carry forward said liens on said property; and

WHEREAS, ORIGIN BANK (herein called "Lender"), the legal owner and holder of the Note and of the liens securing the same, in consideration of the premises and at the request of the Borrower, has agreed to modify or rearrange the time or manner of payment of the Note as hereinafter provided (this "Modification");

NOW, THEREFORE, in consideration of the extension, modification or rearrangement of the time or manner of payment of the Note as hereinafter set forth by the legal owner and holder thereof, the Borrower hereby renews the Note and indebtedness and promises to pay to the order of Lender, the sum of SEVEN MILLION EIGHT HUNDRED SIXTY-ONE THOUSAND NINE HUNDRED SIXTY-EIGHT AND 08/100 DOLLARS ($7,861,968.08), together with interest thereon at the interest rate set out in the Note, payable on demand, or if no demand is made, as follows:

The principal and interest thereon shall be due and payable in accordance with the terms of the Note beginning April 5, 2018, and with a like installment being due and payable on the 5th business day of each succeeding calendar month thereafter until December 31, 2018 (the "Maturity Date"), at which time all outstanding principal and interest shall be finally due and payable. The failure to make any payment required hereunder shall be an Event of Default (as defined in the Loan Documents). Upon the occurrence of an Event of Default, Lender will be entitled to pursue such remedies as provided for in the Loan Documents without any notice or opportunity to cure, such notice and opportunity to cure being expressly waived by Borrower.

Notwithstanding anything contained in the Loan Documents to the contrary, Borrower reserves the right to prepay the outstanding principal balance of the Note, in whole or in part, at any time and from time to time, without premium or penalty.

The parties hereto hereby extend said liens on said collateral until said indebtedness and Note as so renewed and extended have been fully paid, and agree that such extension or rearrangement shall in no manner affect or impair the Note or the liens securing the same and that said liens shall not in any manner be waived, the purpose of this instrument being simply to extend, modify or rearrange the time or manner of payment of the Note and indebtedness and to carry forward all liens securing the same, which are acknowledged by the parties to be valid and subsisting, and the parties further agree that all terms and provisions of said original Note and of the instrument or instruments creating or fixing the liens securing the same shall be and remain in full force and effect as therein written, except as otherwise expressly provided herein.

The Borrower and the Guarantor (herein collectively referred to as the "Obligors") hereby represent and warrant to Lender that the Obligors do not have any claims or offsets against, or defenses or counterclaims to, the terms and provisions of the Loan Documents. Nevertheless, to the extent any determination or assertion is hereafter made that the Obligors have any such claims, offsets, defenses or counterclaims, whether or not now known, anticipated or suspected, fixed, contingent or conditional, at law or in equity (including, but not limited to, the exercise of any rights and remedies under this Modification or the Loan Documents, or the negotiation, execution or delivery of this Modification or any other Loan Documents), the Obligors hereby waive and hereby release Lender, its predecessors, successors and assigns, its parents, subsidiaries and affiliates, agents, counsel, trustees, servicers, beneficiaries, certificate holders of Lender, and the officers, directors, shareholders, partners, employees, attorneys and agents of each of the foregoing (collectively, the "Released Parties") from any and all such claims, offsets, defenses and counterclaims, such waiver and release being with full knowledge and understanding of the circumstances and effects of such waiver and release and after having consulted counsel with respect thereto.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, BORROWER UNCONDITIONALLY WAIVES (A) ALL RIGHTS, REMEDIES, CLAIMS AND DEFENSES BASED UPON OR RELATED TO SECTIONS 51.003, 51.004 AND 51.005 OF THE TEXAS PROPERTY CODE, TO THE EXTENT THE SAME PERTAIN OR MAY PERTAIN TO ANY ENFORCEMENT OF THE NOTE AND/OR GUARANTY; AND (B) ALL RIGHT TO TRIAL BY

JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY HOLDER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF ANY OF THE LOAN DOCUMENTS.

EFFECTIVE April 2, 2018.

BORROWER:

WEST HOUSTON MEMORY CARE, LLC
a Delaware limited liability company

By:   LASALLE WEST HOUSTON
MANAGEMENT, LLC
a Texas limited liability company
Manager

By:   THE LASALLE GROUP, INC.
a Texas corporation
Sole Member

By: _____
Randal P. Brown
Chief Financial Officer

The undersigned guarantors of the above described Note hereby join in and consent to the above Modification of Real Estate Lien and Note.

EFFECTIVE April 2, 2018.

_____
MITCHELL W. WARREN

_____
MELVIN W. WARREN, JR.

THE LASALLE GROUP, INC.
a Texas corporation

By: _____

Randal P. Brown
Chief Financial Officer

ACCEPTED AND AGREED TO:

ORIGIN BANK

By: _____

Randy Impson
Senior Vice President

STATE OF _Texas_ §
§
COUNTY OF _Dallas_ §

BEFORE ME, the undersigned, a Notary Public in and for the said County and State, on this day personally appeared Randal P. Brown, Chief Financial Officer of THE LASALLE GROUP, INC., a Texas corporation, Sole Member of LASALLE WEST HOUSTON MANAGEMENT, LLC, a Texas limited liability company, Manager of WEST HOUSTON MEMORY CARE, LLC, a Delaware limited liability company, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _11_ day of April, 2018.

SONIA R MOLINA
Notary ID #126522397
My Commission Expires
April 5, 2021

_____
NOTARY PUBLIC, State of _Texas_

STATE OF _Texas_ §
COUNTY OF _Dallas_ §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Randal P. Brown, Chief Financial Officer of THE LASALLE GROUP, INC., a Texas corporation, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _11_ day of April, 2018



Notary Public, State of _Texas_

STATE OF _Texas_ §
COUNTY OF _Dallas_ §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared MITCHELL W. WARREN, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _11_ day of April, 2018

Notary Public, State of _Texas_

STATE OF _Texas_ §
COUNTY OF _Dallas_ §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared MELVIN W. WARREN, JR., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _11_ day of April, 2018



Notary Public, State of _Texas_

STATE OF _Louisiana_ §
~~PARISH~~ §
~~COUNTY~~ OF _Ouachita_ §

    BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared Randy Impson, Senior Vice President of ORIGIN BANK, and acknowledged to me that he executed the foregoing instrument on behalf of said banking institution for the purposes and consideration therein expressed and in the capacity therein stated.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _13th_ day of April, 2018.



Bryan L. Burgess
Notary Public
LSBA No. 20132
Ouachita Parish, Louisiana

Notary Public, State of ~~Texas~~ _Louisiana_

# Exhibit 4

## AGREEMENT OF GUARANTORS

This Agreement of Guarantors (this "Agreement") is dated effective as of March 31, 2018 between ORIGIN BANK ("Lender") and THE LASALLE GROUP, INC., a Texas corporation, MITCHELL W. WARREN and MELVIN W. WARREN, JR. (each a "Guarantor" and collectively the "Guarantors").

WHEREAS, by documents of even date herewith, Lender has renewed, extended, rearranged and modified three (3) loans owed by or guaranteed by the Guarantors, these loans being more specifically identified as follows:

1.      A line of credit in the original principal amount of FOUR MILLION AND NO/100 DOLLARS ($4,000,000.00) as evidenced by a Promissory Note dated June 30, 2015, executed by THE LASALLE GROUP, INC., a Texas corporation, payable to the order of COMMUNITY TRUST BANK, now known as ORIGIN BANK, and guaranteed by MITCHELL W. WARREN and MELVIN W. WARREN, JR. (the "LaSalle Loan");

2.      A line of credit in the original principal sum of FOUR MILLION AND NO/100 DOLLARS ($4,000,000.00) as evidenced by a Promissory note dated June 30, 2015, executed by LAKE SUPERIOR CONTRACTING, L.P., a Texas limited partnership, payable to the order of COMMUNITY TRUST BANK, now known as ORIGIN BANK, and guaranteed by Guarantors (the "Lake Superior Loan"); and

3.      A loan in the original principal sum of EIGHT MILLION FIVE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($8,550,000.00) as evidenced by a Promissory note dated July 6, 2012, executed by WEST HOUSTON MEMORY CARE, LLC, a Delaware limited liability company, payable to the order of COMMUNITY TRUST BANK, now known as ORIGIN BANK, and guaranteed by Guarantors (the "West Houston Loan" and together with the LaSalle Loan and the Lake Superior Loan are collectively herein referred to as the "Loans").

WHEREAS, each of the Guarantors own equity interests in and to certain related entities (each an "Equity Entity") as reflected on Exhibit's A-1, A-2 and A-3 attached hereto and incorporated herein for all purposes. As a result of such ownership interest from time to time, the entities make distributions of money or property (any regular or special distributions being a "Distribution")  to the Guarantors (each such ownership interest being an "Equity Interest").

WHEREAS, by separate agreements, each of the Guarantors have established a demand deposit account with Lender more specifically identified as follows (each being a "LockBox Account" and collectively, the "LockBox Accounts"):

THE LASALLE GROUP, INC.          Account # _____
MITCHELL W. WARREN              Account # _____
MELVIN W. WARREN, JR.           Account # _____

NOW THEREFORE, in connection with the renewal, extension, rearrangement and modification of the Loans, the parties hereto agree as follows:

1.   Establish Lock Box for Distributions:  Guarantors will cause any distribution of money with respect to the Equity Interests to be directly deposited, or tendered to Lender for deposit, to the Guarantor's respective LockBox Account.  Guarantors will inform each Equity Entity and obtain the written confirmation from each Equity Entity of Guarantor's instructions in accordance with this section, by letter countersigned by an authorized representative of the Equity Entity substantially in the form of Exhibit "B" attached hereto provided to Lender no later than thirty (30) day following the date hereof and deliver countersigned copies thereof to Lender. Guarantors expressly authorize Lender to endorse any check or draft received by Lender in the name of Guarantor for deposit into the LockBox Accounts.

2.   Use of LockBox Funds by Guarantor:  So long as none of the conditions specified in Paragraph 3 hereof exist and subject to Paragraph 6 hereof regarding "Cash Collateral", borrower may make withdrawals from the Guarantor's LockBox Account.

3.   Conditions for Termination of Guarantor's Use of LockBox: Upon the occurrence of any of the events specified in this section, Guarantor will have no right to make withdrawals from the Guarantor's LockBox (a "LockBox Default").  These events are:

   a.   An event of default pursuant to the terms and conditions of any of the Loans or the loan documents evidencing or securing the Loans (the "Loan Documents" as modified);

   b.   A breach of this Agreement including any representations and warranties made herein.

4.   Effect of LockBox Default:  Upon the occurrence of a LockBox Default, (a) Guarantors will have no right to withdraw or use funds in the LockBox Accounts (b) Lender may, and Guarantor's so authorize Lender to, withdraw such funds as Lender may see fit in Lender's sole discretion to apply such withdrawn funds as Lender may deem necessary, prudent or expeditious under the terms and conditions of the Loan Documents such application under the terms and conditions of one or more of the Loans being in the Lender's sole and absolute discretion.

5.   Guarantor Reporting Requirements:  Guarantors will on the 15th of every calendar month following execution of this Agreement deliver to Lender a report demonstrating the cumulative net worth of the Equity Entities.  Such report to be in a form and containing such information as Lender may reasonably require.  If the cumulative net worth of the Guarantors' ownership interest in the Equity Entities is $25,000,000.00 or less, such will be a "LockBox Default" and will likewise be an Event of Default (as that term is

defined in the Loan Documents) and for which each borrower thereunder shall have no right to notice of default and opportunity to cure. The failure to deliver the report required by this section will also be a LockBox Default.

6. <u>Cash Collateral Maintenance</u>: Notwithstanding anything in this Agreement to the contrary, on or before December 31, 2018, Guarantors and Borrowers shall cause to be deposited into the LockBox Accounts an amount sufficient to equity $300,000.00 collectively (in one or more of the LockBox Accounts) (such $300,000 being the "Cash Collateral"). Thereafter, until the termination of this Agreement and regardless of whether a LockBox Default exists, there shall remain on deposit collective in the Lock Box Accounts an amount equal to the Cash Collateral. Failure to deposit or maintain the Cash Collateral as required by this Paragraph 6 shall be an event of default under the Loan Documents, an Event of Default under this Agreement, and a LockBox Default as defined herein.

7. <u>Lender Security Interest in and Control of LockBox Accounts</u>: Each Guarantor, hereby assigns, sets over and transfers to Lender all right, title and interest of the undersigned in and to the LockBox Accounts or any replacement account, and all sums now or at any time hereafter on deposit therein, together with all earnings of every kind and description which may now or hereafter accrue thereon, for the purposes of securing payment of the Loans. This assignment shall be construed as a grant of a security interest in the LockBox Accounts to Lender and (subject to the terms hereof) a grant of "control" in and over such accounts each as defined in the Texas Business and Commerce Code.

8. <u>Authority of Lender to Act for Guarantors with Equity Entities</u>: Through execution and delivery of this Agreement each of the Guarantors authorize Lender to act in the name of Guarantors with each of the Equity Entities without the joinder of Guarantors. Upon presentation of this Agreement to an Equity Entity, such entity is expressly authorized to release such information to or follow such instructions issued by Lender in the name of the Guarantor as if same were issued by the Guarantor directly. Through execution and delivery of this Agreement, Guarantors agree to indemnify and hold harmless from any loss, cost or damage, each Equity Entity who may act under the authority of this Paragraph 8, it being the express intent of each Guarantor that such Equity Entity acting in reliance hereof shall be an intended third party beneficiary of this Paragraph 8 of this Agreement.

9. <u>Cross-Default</u>: The parties hereto agree that any Event of Default under the West Houston Loan shall be deemed an Event of Default on both the LaSalle Loan and the Lake Superior Loan. Additionally, any Event of Default under either the LaSalle Loan or the Lake Superior Loan shall be deemed and Event of Default on both loans. Lender at its option, may declare the unpaid principal of and accrued interest then owing upon the LaSalle Loan and/or the Lake Superior Loan, to be immediately due and payable.

10. <u>Other Matters</u>: The parties hereto acknowledge that they have read the foregoing and that it accurately describes their agreement. All covenants and agreements contained herein shall bind and inure to the benefit of, and be enforceable by, the respective successors and assigns of the parties hereto, whether so expressed or not, and in particular shall inure to the benefit of and be enforceable by Lender. No modification, consent, amendment or waiver of any provision of this Agreement, no consent to any departure by

Guarantors therefrom shall be effective unless the same shall be in writing and signed by an officer of Lender, and then shall be effective only in the specific instance and for the purpose for which given.  This Agreement shall be construed and enforced in accordance with the laws of the State of Texas and any portion hereof held by a court of competent jurisdiction to be invalid or illegal shall not invalidate or nullify the remainder of this Agreement, but shall be confined only to that portion held invalid or illegal.  No failure or delay on the part of Lender to exercise any right hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further exercise thereof.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.  Where a conflict exists between the terms and conditions of this Agreement and the loan documents executed of even date, the terms and conditions of this Agreement shall prevail.  All accounting terms not specifically defined herein shall be construed in accordance with generally accepted principles of good accounting practice consistently applied on the basis used by Borrower in prior years.

EFFECTIVE as of March 31, 2018.

GUARANTORS:

THE LASALLE GROUP, INC.
a Texas corporation

By: _____

Randal P. Brown
Chief Financial Officer

_____
MITCHELL W. WARREN

_____
MELVIN W. WARREN, JR.

ACCEPTED AND AGREED TO BY:

**WEST HOUSTON MEMORY CARE, LLC**
a Delaware limited liability company

By: **LASALLE WEST HOUSTON
MANAGEMENT, LLC**
a Texas limited liability company
Manager

    By: **THE LASALLE GROUP, INC.**
a Texas corporation
Sole Member

        By: _____
Randal P. Brown
Chief Financial Officer

**LAKE SUPERIOR CONTRACTING, L.P.**
a Texas limited partnership

By: **LAKE SUPERIOR MANAGEMENT, LLC**
a Texas limited liability company
General Partner

    By: **THE LASALLE GROUP, INC.**
a Texas corporation
Sole Member

        By: _____
Randal P. Brown
Chief Financial Officer

LENDER:

ORIGIN BANK

By: _____
Randy Impson
Senior Vice President

EXHIBIT A-1

Investment Valuation of THE LASALLE GROUP, INC.

[attached]

The LaSalle Group, Inc.
Investment Valuation
9/30/2017

| Stabilized Properties at Capitalization Rate | % Ownership | Original Appraisal Date | Appraised Value | EBITDA | 2017 Income Capitalization @ 6.75% | Liabilities | Assets | Total Value 9/30/2017 | LaSalle's Books 9/30/2017 | LaSalle's Value 9/30/2017 | Change |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Carrollton Autumn Leaves | 1.00% | 4/12/2005 | N/A | (313,229.00) | (4,640,429.63) | 6,653,977.10 | N/A | - | - | - | - |
| Flower Mound Autumn Leaves | 1.00% | 3/2/2009 | N/A | (2,914.92) | (43,184.00) | 7,498,296.04 | N/A | - | - | - | - |
| Fossil Creek Memory Care | 6.00% | 10/6/2009 | N/A | 280,370.82 | 4,286,975.11 | 6,999,051.41 | N/A | - | - | - | - |
| Vernon Hills Memory Care | 6.00% | 6/1/2009 | N/A | 211,074.88 | 3,127,035.26 | 11,611,845.35 | N/A | 8,084.70 | 8,084.70 | - | (8,084.70) |
| Orland Park Memory Care | 3.00% | 4/24/2008 | N/A | 723,603.72 | 10,720,055.11 | 9,664,624.39 | N/A | 1,051,430.82 | 105,665.51 | 31,542.92 | (74,122.59) |
| Denton Autumn Leaves | 1.00% | 3/31/2009 | N/A | 214,617.65 | 3,179,517.78 | 3,170,330.44 | N/A | | 10,550.00 | | (10,550.00) |
| Corinth Assisted Care | 0.01% | N/A | N/A | (164,421.81) | (2,435,878.67) | 6,703,939.44 | N/A | - | - | - | |
| Corinth Autumn Oaks | 1.00% | N/A | N/A | 615,754.06 | 9,122,282.37 | 1,286,147.41 | N/A | - | - | - | |
| Cypresswood Autumn Leaves | 10.00% | 3/17/2010 | N/A | 508,351.52 | 7,531,133.63 | 10,519,309.89 | N/A | - | - | - | |
| Tulsa Autumn Leaves | 5.00% | 8/16/2010 | N/A | 415,545.10 | 6,156,223.63 | 9,438,881.49 | N/A | - | - | - | |
| Oswego Autumn Leaves | 4.50% | 5/23/2011 | N/A | 744,010.48 | 11,022,510.81 | 8,949,222.27 | N/A | 3,557,400.16 | 29,994.64 | 160,983.01 | 130,988.37 |
| Edmond Autumn Leaves | 4.00% | 12/13/2012 | N/A | 976,144.04 | 14,461,393.19 | 7,465,116.65 | N/A | 6,822,354.73 | 177,176.96 | 305,565.54 | 128,388.58 |
| Towne Lake Autumn Leaves | 4.75% | 12/14/2012 | N/A | 817,138.89 | 12,105,761.33 | 6,305,420.34 | N/A | 3,800,340.99 | 168,230.89 | 180,516.20 | 12,285.31 |
| Sugarloaf Autumn Leaves | 4.75% | 2/29/2013 | N/A | 333,103.86 | 5,675,612.74 | 8,450,033.66 | N/A | | | | |
| Stone Oak Autumn Leaves | 10.00% | 2/13/2013 | N/A | 496,128.46 | 7,350,051.26 | 9,099,484.84 | N/A | 3,839,455.59 | 290,180.06 | 182,374.14 | (107,805.92) |
| Georgetown Autumn Leaves | 4.75% | 12/3/2013 | N/A | 820,941.90 | 12,162,102.22 | 8,322,646.63 | N/A | 4,025,339.88 | 435,434.98 | 191,070.64 | (244,364.34) |
| Arlington Heights Autumn Leaves | 4.75% | 10/23/2013 | N/A | 1,046,747.98 | 15,507,377.48 | 11,484,837.60 | N/A | 5,225,517.23 | 408,635.86 | 248,212.07 | (160,423.79) |
| SW OKC Autumn Leaves | 4.75% | 2/26/2014 | N/A | 1,027,706.94 | 15,225,288.00 | 9,599,770.77 | N/A | | | | |
| **Total Stabilized Properties** | | | | | | | | 29,135,723.14 | 1,633,953.60 | 1,299,360.52 | (334,593.08) |

| Stabilizing Properties at Appraised Value | % Ownership | Original Appraisal Date | Appraised Value | Trailing 12 Mo Revenue | Trailing & Mo Revenue /6 | Liabilities | Assets | Total Value 9/30/2017 | LaSalle's Books 9/30/2017 | LaSalle's Value 9/30/2017 | Change |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SWFW Autumn Leaves | 51.00% | 6/5/2008 | 8,850,000.00 | N/A | N/A | 6,439,612.10 | N/A | 2,410,387.90 | 5,301,082.79 | 5,301,082.79 | - |
| Riverstone Autumn Leaves | 4.75% | 3/17/2010 | 10,790,000.00 | N/A | N/A | 7,868,906.17 | N/A | 2,921,093.83 | 168,510.68 | 138,751.96 | (29,758.72) |
| Pearland Autumn Leaves | 4.75% | 12/15/2010 | 11,910,000.00 | N/A | N/A | 10,178,266.93 | N/A | 1,731,733.07 | 118,879.45 | 82,258.37 | (36,623.08) |
| St Charles Autumn Leaves | 5.00% | 10/24/2011 | 11,980,000.00 | N/A | N/A | 8,840,785.10 | N/A | 3,139,294.90 | 160,704.30 | 156,514.75 | (4,189.55) |
| West Houston Autumn Leaves | 4.75% | 6/29/2012 | 14,030,000.00 | N/A | N/A | 11,137,641.35 | N/A | 2,892,358.65 | 170,403.99 | 137,387.04 | (33,016.95) |
| Cinco Ranch Autumn Leaves | 4.75% | 4/19/2013 | 13,860,000.00 | N/A | N/A | 10,206,647.68 | N/A | 3,653,352.32 | 202,554.00 | 173,534.24 | (29,419.76) |
| Stonebridge Autumn Leaves | 4.75% | 7/24/2013 | 12,900,000.00 | N/A | N/A | 9,109,983.87 | N/A | 3,790,036.13 | 200,299.46 | 180,026.72 | (20,272.74) |
| Westover Hills Autumn Leaves | 4.75% | 7/11/2014 | 14,500,000.00 | N/A | N/A | 11,747,894.49 | N/A | 2,752,105.51 | 170,893.96 | 130,725.01 | (40,168.95) |
| Gunter Autumn Leaves | 10.00% | 2/3/2014 | 16,000,000.00 | N/A | N/A | 8,975,763.07 | N/A | 7,024,236.93 | 684,325.73 | 702,423.69 | 18,097.96 |
| Amarillo Autumn Leaves | 4.75% | 1/5/2015 | 13,500,000.00 | N/A | N/A | 8,919,656.00 | N/A | 4,580,344.00 | 333,536.00 | 217,566.54 | (15,969.66) |
| Estero Autumn Leaves | 7.25% | 1/19/2016 | 15,300,000.00 | N/A | N/A | 11,149,855.36 | N/A | 4,150,144.64 | 339,254.83 | 300,885.49 | (38,369.34) |
| Wildwood Autumn Leaves | 7.25% | 10/5/2014 | 15,600,000.00 | N/A | N/A | 10,097,035.99 | N/A | 5,502,964.01 | 235,328.55 | 391,964.89 | 63,636.31 |
| Greenville Autumn Leaves | 7.25% | 1/14/2014 | 13,500,000.00 | N/A | N/A | 9,559,237.21 | N/A | 3,940,712.79 | 222,585.90 | 285,701.68 | 63,115.78 |
| Overland Park Memory Care | 7.25% | 12/15/2014 | 16,700,000.00 | N/A | N/A | 9,636,995.13 | N/A | 7,063,004.87 | 168,188.55 | 512,067.85 | 343,879.30 |
| South Austin Autumn Leaves | 4.84% | 6/28/2015 | 16,300,000.00 | N/A | N/A | 11,229,727.19 | N/A | 5,070,272.81 | 137,194.00 | 245,175.69 | 107,981.69 |
| Fort Mill Autumn Leaves | 5.00% | 9/8/2015 | 13,300,000.00 | N/A | N/A | 8,895,682.38 | N/A | 4,404,317.62 | 144,832.00 | 220,215.87 | 75,383.87 |
| **Total Stabilizing Properties** | | | | | | | | 65,017,339.78 | 8,658,974.22 | 9,183,280.37 | 524,306.15 |

| Construction Investment at Cost | % Ownership | Original Appraisal Date | Appraised Value | Trailing 12 Mo Revenue | Trailing & Mo Revenue /6 | Liabilities | Assets | Total Value 9/30/2017 | LaSalle's Books 9/30/2017 | LaSalle's Value 9/30/2017 | Change |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Whitley of Wheeling Assisted Living | 4.75% | N/A | N/A | N/A | N/A | 7,610,408.38 | 14,804,522.58 | 7,194,114.00 | 341,720.42 | 341,729.42 | - |
| Venice Autumn Leaves | 7.50% | N/A | N/A | N/A | N/A | 8,579,241.38 | 11,873,380.38 | 3,294,539.00 | 247,090.42 | 247,090.43 | - |
| Lee Autumn Leaves | 4.75% | N/A | N/A | N/A | N/A | 5,889,352.78 | 8,843,693.78 | 2,954,341.00 | 140,331.20 | 140,331.20 | - |
| Sarasota Autumn Leaves | 6.50% | N/A | N/A | N/A | N/A | 5,494,950.55 | 9,710,092.55 | 4,215,842.00 | 274,028.73 | 274,028.73 | - |
| Naples | 6.50% | N/A | N/A | N/A | N/A | 1,145,302.24 | 5,601,397.24 | 4,459,085.00 | 222,954.00 | 289,840.53 | 66,886.53 |
| **Total Construction Properties** | | | | | | | | 22,117,921.00 | 1,226,125.94 | 1,293,012.29 | 66,886.53 |

| **Total Real Estate Investments** | | | | | | | | 116,270,983.92 | 11,519,053.76 | 11,775,653.18 | 256,599.59 |

| Other | % Ownership | Original Appraisal Date | Appraised Value | Trailing 12 Mo Revenue | Trailing & Mo Revenue /6 | Liabilities | Assets | Total Value 9/30/2017 | LaSalle's Value 9/30/2017 | LaSalle's Value 9/30/2017 | Change |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TLG Family Management, LLC | 5.00% | N/A | N/A | 7,833,104.55 | 7,731,098.04 | 4,869,642.65 | 10,678,985.73 | 7,833,104.55 | 392,752.74 | 391,655.23 | (1,097.51) |
| **Total Other Business Investments** | | | | | | | | 7,833,104.55 | 392,752.74 | 391,655.23 | (1,097.51) |
| **Total Investment Value** | | | | | | | Total Investment V | 124,104,088.47 | 11,911,806.50 | 12,167,308.41 | 255,502.08 |

EXHIBIT A-2

Investment Valuation of MITCHELL W. WARREN

[attached]

**Mitchel W. Warren**
**Investment Valuation**
**9/30/2017**

| | % Ownership | Original Appraisal Date | Appraised Value | Trailing 12 Mo Revenue | Trailing 6 Mo Revenue (a) | EBITDA | 2017 Income Capitalization (a) | 6.75% | Assets | Liabilities | Total Value 9/30/2017 | Owners Value 9/30/2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Stabilized Properties at Capitalization Rate** | | | | | | | | | | | | |
| Denton Autumn Leaves | 4.00% | 3/21/2009 | N/A | | | 214,617.45 | 3,179,517.78 | | N/A | 6,703,939.44 | | |
| Cypresswood Autumn Leaves | 1.09% | 3/17/2010 | N/A | | | 508,351.52 | 7,511,133.63 | | N/A | 9,438,881.49 | | |
| Tulsa Autumn Leaves | 1.15% | 8/16/2010 | N/A | | | 415,045.19 | 6,148,817.63 | | N/A | 8,949,272.77 | | |
| Oswego Autumn Leaves | 4.03% | 5/23/2011 | N/A | | | 744,019.48 | 11,022,510.81 | | N/A | 7,465,110.65 | | |
| Edmond Autumn Leaves | 5.40% | 12/13/2012 | N/A | | | 976,144.04 | 14,461,393.19 | | N/A | 6,822,354.73 | 3,557,400.16 | 144,074.71 |
| Tomoka Lake Autumn Leaves | 6.41% | 12/14/2012 | N/A | | | 817,158.89 | 12,105,761.33 | | N/A | 8,305,420.34 | 7,639,038.46 | 412,508.08 |
| Sugarloaf Autumn Leaves | 6.41% | 2/22/2013 | N/A | | | 383,103.86 | 5,675,612.74 | | N/A | 8,450,000.66 | 3,800,340.99 | 243,696.87 |
| Stone Oak Autumn Leaves | 9.50% | 2/13/2013 | N/A | | | 496,128.46 | 7,350,051.26 | | N/A | 9,099,484.84 | | |
| Georgetown Autumn Leaves | 9.94% | 12/3/2013 | N/A | | | 820,941.90 | 12,162,103.22 | | N/A | 8,322,646.63 | 3,839,455.59 | 381,545.90 |
| Arlington Heights Autumn Leaves | 9.94% | 10/23/2013 | N/A | | | 1,046,747.98 | 15,507,377.48 | | N/A | 11,484,837.60 | 4,022,539.88 | 399,239.90 |
| SW OKC Autumn Leaves | 13.58% | 2/26/2014 | N/A | | | 1,077,706.94 | 15,225,288.00 | | N/A | 9,999,770.77 | 5,225,517.23 | 709,527.26 |
| **Total Stabilized Properties** | | | | | | | | 6.75% | | | 20,135,723.14 | 2,201,092.71 |
| **Stabilizing Properties at Appraised Value** | | | | | | | | | | | | |
| SWFW Autumn Leaves | 12.25% | 6/5/2008 | 8,850,000.00 | | | N/A | N/A | | N/A | 6,439,612.10 | 2,410,387.90 | 295,272.52 |
| Riverview Autumn Leaves | 1.09% | 2/17/2010 | 10,290,000.00 | | | N/A | N/A | | N/A | 7,868,906.17 | 2,921,093.83 | 31,912.95 |
| Pearland Autumn Leaves | 1.09% | 12/15/2010 | 11,910,000.00 | | | N/A | N/A | | N/A | 10,178,286.93 | 1,731,713.07 | 18,918.97 |
| St Charles Autumn Leaves | 28.50% | 10/24/2011 | 11,080,000.00 | | | N/A | N/A | | N/A | 8,849,705.10 | 3,110,294.90 | 887,134.05 |
| West Houston Autumn Leaves | 6.41% | 6/29/2012 | 14,030,000.00 | | | N/A | N/A | | N/A | 11,137,641.35 | 2,892,358.65 | 185,472.50 |
| Chico Ranch Autumn Leaves | 8.94% | 4/19/2013 | 13,860,000.00 | | | N/A | N/A | | N/A | 10,206,647.68 | 3,653,352.32 | 326,655.36 |
| Stockbridge Autumn Leaves | 8.94% | 7/24/2013 | 12,900,000.00 | | | N/A | N/A | | N/A | 9,109,963.87 | 3,790,036.13 | 338,876.61 |
| Webster Hills Autumn Leaves | 13.58% | 7/11/2014 | 14,500,000.00 | | | N/A | N/A | | N/A | 11,747,894.49 | 2,752,105.51 | 373,683.64 |
| Gurnee Autumn Leaves | 14.42% | 2/20/2014 | 16,000,000.00 | | | N/A | N/A | | N/A | 8,975,763.07 | 7,024,236.93 | 1,013,026.07 |
| Amarillo Autumn Leaves | 15.83% | 1/5/2015 | 13,500,000.00 | | | N/A | N/A | | N/A | 8,919,656.00 | 4,580,344.00 | 725,240.22 |
| Estero Autumn Leaves | 12.73% | 1/19/2016 | 15,300,000.00 | | | N/A | N/A | | N/A | 11,149,855.36 | 4,150,144.64 | 528,494.98 |
| Wirebrand Autumn Leaves | 12.73% | 10/5/2014 | 15,600,000.00 | | | N/A | N/A | | N/A | 10,097,035.99 | 5,502,964.01 | 700,768.07 |
| Greenville Autumn Leaves | 12.73% | 11/14/2014 | 13,900,000.00 | | | N/A | N/A | | N/A | 9,959,287.21 | 3,940,712.79 | 501,825.14 |
| Overland Park Memory Care | 12.35% | 12/15/2014 | 16,700,000.00 | | | N/A | N/A | | N/A | 9,636,995.13 | 7,063,004.87 | 899,429.53 |
| South Austin Autumn Leaves | 12.88% | 6/28/2015 | 16,300,000.00 | | | N/A | N/A | | N/A | 11,226,727.19 | 5,070,272.81 | 653,083.83 |
| FortMill Autumn Leaves | 7.88% | 9/8/2015 | 13,300,000.00 | | | N/A | N/A | | N/A | 8,895,682.58 | 4,004,317.42 | 346,840.00 |
| **Total Stabilizing Properties** | | | | | | | | | | | 65,017,339.78 | 7,831,634.02 |
| **Construction Investment at Cost** | | | | | | | | | | | | |
| Whitley of Wheeling Assisted Living | 14.58% | N/A | N/A | | | N/A | N/A | | 14,804,522.58 | 7,610,408.58 | 7,194,114.00 | 1,048,765.13 |
| Venice Autumn Leaves | 12.88% | N/A | N/A | | | N/A | N/A | | 11,873,880.38 | 8,579,741.38 | 3,294,539.00 | 424,357.21 |
| Lee Summit Autumn Leaves | 10.92% | N/A | N/A | | | N/A | N/A | | 8,843,693.78 | 5,889,352.78 | 2,954,341.00 | 588,647.42 |
| Stanford Autumn Leaves | 16.54% | N/A | N/A | | | N/A | N/A | | 9,710,792.55 | 5,494,950.55 | 4,215,842.00 | 697,387.62 |
| Naples Autumn Leaves | 17.48% | N/A | N/A | | | N/A | N/A | 100% | 5,601,387.24 | 1,142,302.24 | 4,459,085.00 | 779,572.91 |
| **Total Construction Properties** | | | | | | | | | | | 22,117,921.00 | 3,538,730.30 |
| **Total Real Estate Investments** | | | | | | | | | | | 116,270,983.92 | 13,661,457.03 |
| **Other** | | | | | | | | | | | | |
| The LaSalle Group, Inc | 56.25% | N/A | N/A | 7,833,104.55 | | N/A | | | 150,367,769.00 | 138,947,476.00 | 11,420,293.00 | 6,423,914.81 |
| TLG Family Management, LLC | 24.24% | N/A | N/A | | 7,721,908.04 | N/A | | | 10,678,985.73 | 4,869,642.65 | 7,833,104.55 | 1,898,475.16 |
| **Total Other Business Investments** | | | | | | | | | | | 19,253,397.55 | 8,322,389.97 |
| **Total Investment Value** | | | | | | | | | | Total Investment Value | 135,524,381.47 | 21,983,847.01 |

EXHIBIT A-3

Investment Valuation of MELVIN W. WARREN, JR.

[attached]

Melvin W. "Win" Warren, Jr.
Investment Valuation
9/30/2017

| Stabilized Properties at Capitalization Rate | % Ownership | Original Appraisal Date | Appraised Value | EBITDA | 2017 Income Capitalization @ | 6.75% | Assets | Liabilities | Total Value 9/30/2017 | Owners Value 9/30/2017 |
|---|---|---|---|---|---|---|---|---|---|---|
| Carrollton Autumn Leaves | 18.67% | 4/12/2005 | N/A | (313,229.00) | (4,640,430.63) | | N/A | 6,653,977.10 | | |
| Flower Mound Autumn Leaves | 23.39% | 3/2/2009 | N/A | (2,914.92) | (43,184.00) | | N/A | 7,498,296.64 | | |
| Fossil Creek Memory Care | 18.39% | 10/6/2009 | N/A | 289,370.82 | 4,286,975.11 | | N/A | 6,990,071.41 | | |
| Vernon Hills Memory Care | 6.89% | 6/12/2009 | N/A | 211,074.88 | 3,127,035.26 | | N/A | 11,616,845.35 | | |
| Corinth Assisted Care | 32.50% | N/A | N/A | (164,411.81) | (2,435,878.67) | | N/A | 8,286,147.41 | | |
| Cypresswood Autumn Leaves | 18.41% | 3/17/2010 | N/A | 508,351.52 | 7,531,133.63 | | N/A | 9,438,881.49 | | |
| Tulsa Autumn Leaves | 43.83% | 8/16/2010 | N/A | 415,045.19 | 6,148,817.63 | | N/A | 8,949,272.77 | | |
| Oswego Autumn Leaves | 26.45% | 5/23/2011 | N/A | 744,049.48 | 11,022,510.81 | | N/A | 7,465,105.65 | 3,557,460.16 | 940,932.34 |
| Edmond Autumn Leaves | 30.60% | 12/13/2012 | N/A | 976,144.04 | 14,461,393.19 | | N/A | 6,823,354.73 | 7,639,038.46 | 2,337,545.77 |
| Tomed Lake Autumn Leaves | 36.34% | 12/14/2012 | N/A | 817,138.89 | 12,105,761.33 | | N/A | 8,395,420.34 | 3,800,340.99 | 1,380,048.91 |
| Sugarloaf Autumn Leaves | 36.34% | 2/2/2013 | N/A | 383,103.86 | 5,675,612.74 | | N/A | 8,450,000.66 | | |
| Stone Oak Autumn Leaves | 30.00% | 2/13/2013 | N/A | 496,128.46 | 7,350,051.26 | | N/A | 9,099,484.84 | | |
| Georgetown Autumn Leaves | 22.31% | 12/5/2013 | N/A | 820,941.90 | 12,162,102.22 | | N/A | 8,322,646.63 | 3,839,455.59 | 1,048,651.31 |
| Arlington Heights Autumn Leaves | 22.31% | 10/23/2013 | N/A | 1,046,747.98 | 15,507,377.48 | | N/A | 11,484,837.60 | 4,022,539.88 | 897,529.21 |
| SW OKC Autumn Leaves | 21.67% | 2/26/2014 | N/A | 1,027,706.94 | 15,225,288.00 | | N/A | 9,099,770.77 | 5,225,517.23 | 1,132,467.55 |
| **Total Stabilized Properties** | | | | | | | | | 29,135,723.14 | 7,738,075.10 |
| Stabilizing Properties at Appraised Value | | | | | | | | | | |
| SWPW Autumn Leaves | 36.75% | 6/25/2008 | 8,850,000.00 | N/A | N/A | | N/A | 6,439,612.10 | 2,410,387.90 | 885,817.55 |
| Riverstone Autumn Leaves | 41.66% | 2/17/2010 | 10,790,000.00 | N/A | N/A | | N/A | 7,868,906.17 | 2,921,093.83 | 1,216,854.66 |
| Pearland Autumn Leaves | 41.66% | 12/15/2010 | 11,910,000.00 | N/A | N/A | | N/A | 10,178,286.93 | 1,731,713.07 | 721,388.37 |
| St Charles Autumn Leaves | 6.30% | 10/24/2011 | 11,980,000.00 | N/A | N/A | | N/A | 8,849,705.10 | 3,130,294.90 | 203,469.17 |
| West Houston Autumn Leaves | 36.34% | 6/29/2012 | 14,030,000.00 | N/A | N/A | | N/A | 11,137,641.35 | 2,892,358.65 | 1,051,010.82 |
| Cinco Ranch Autumn Leaves | 28.31% | 4/19/2013 | 13,860,000.00 | N/A | N/A | | N/A | 10,206,647.68 | 3,653,352.32 | 1,034,218.37 |
| Stockbridge Autumn Leaves | 28.31% | 7/11/2014 | 12,900,000.00 | N/A | N/A | | N/A | 9,109,963.87 | 3,790,036.13 | 1,072,911.85 |
| Westover Hills Autumn Leaves | 21.67% | 7/11/2014 | 14,500,000.00 | N/A | N/A | | N/A | 11,747,894.49 | 2,752,105.51 | 596,433.55 |
| Gomez Autumn Leaves | 23.08% | 2/10/2014 | 16,000,000.00 | N/A | N/A | | N/A | 8,975,763.07 | 7,024,236.93 | 1,621,062.18 |
| Amarillo Autumn Leaves | 18.92% | 1/25/2015 | 13,500,000.00 | N/A | N/A | | N/A | 8,919,656.00 | 4,580,344.00 | 866,470.33 |
| Estero Autumn Leaves | 20.27% | 1/19/2016 | 15,300,000.00 | N/A | N/A | | N/A | 11,149,855.36 | 4,150,144.64 | 841,603.75 |
| Winboard Autumn Leaves | 20.27% | 10/5/2014 | 15,600,000.00 | N/A | N/A | | N/A | 10,097,035.99 | 5,503,964.01 | 1,115,210.05 |
| Greenville Autumn Leaves | 20.27% | 11/14/2014 | 13,500,000.00 | N/A | N/A | | N/A | 9,559,287.21 | 3,940,712.79 | 798,610.08 |
| Overland Park Memory Care | 20.27% | 12/15/2014 | 16,700,000.00 | N/A | N/A | | N/A | 9,636,995.13 | 7,063,004.87 | 1,431,560.08 |
| South Austin Autumn Leaves | 15.12% | 6/28/2015 | 16,500,000.00 | N/A | N/A | | N/A | 11,259,727.19 | 5,070,272.81 | 766,593.56 |
| Fort Mill Autumn Leaves | 10.13% | 9/8/2015 | 13,300,000.00 | N/A | N/A | | N/A | 8,895,682.58 | 4,404,317.42 | 445,937.14 |
| **Total Stabilizing Properties** | | | | | | | | | 65,017,339.78 | 14,668,361.52 |

| Construction Investment at Cost | % Ownership | Original Appraisal Date | Appraised Value | Trailing 12 Mo Revenue | Trailing 6 Mo Revenue @ | 100% | Assets | Liabilities | Total Value 9/30/2017 | Owners Value 9/30/2017 |
|---|---|---|---|---|---|---|---|---|---|---|
| Whitley of Wheeling Assisted Living | 13.67% | N/A | N/A | N/A | N/A | | 14,804,522.58 | 7,610,408.58 | 7,194,114.00 | 1,846,865.75 |
| Venice Autumn Leaves | 15.12% | N/A | N/A | N/A | N/A | | 11,873,880.38 | 8,579,341.38 | 3,294,539.00 | 498,113.71 |
| Lee Summit Autumn Leaves | 17.08% | N/A | N/A | N/A | N/A | | 8,845,693.78 | 5,889,352.78 | 2,954,341.00 | 504,638.75 |
| Sarasota Autumn Leaves | 13.71% | N/A | N/A | N/A | N/A | | 9,710,792.55 | 5,494,950.55 | 4,215,842.00 | 577,994.59 |
| Naples | 11.02% | N/A | N/A | N/A | N/A | | 5,601,387.24 | 1,142,302.24 | 4,459,085.00 | 491,266.31 |
| **Total Construction Properties** | | | | | | | | | 22,117,921.00 | 3,918,609.10 |
| **Total Real Estate Investments** | | | | | | | | | 116,270,983.92 | 26,325,045.72 |

| Other | % Ownership | Original Appraisal Date | Appraised Value | | | | Assets | Liabilities | Total Value 9/30/2017 | LaSalle's Value 9/30/2017 |
|---|---|---|---|---|---|---|---|---|---|---|
| The LaSalle Group, Inc | 43.73% | N/A | N/A | N/A | N/A | | 150,367,769.00 | 138,947,476.00 | 11,420,293.00 | 4,996,378.19 |
| TLG Family Management, LLC | 70.76% | N/A | N/A | 7,833,104.55 | 7,721,598.04 | | 10,678,983.73 | 4,869,642.65 | 7,833,104.55 | 5,542,974.16 |
| **Total Other Business Investments** | | | | | | | | | 19,253,397.55 | 10,539,352.55 |
| **Total Investment Value** | | | | | | | | Total Investment Vi | 135,524,381.47 | 36,864,398.07 |

# Exhibit 5

FILED
DALLAS COUNTY
1/28/2019 10:53 AM
FELICIA PITRE
DISTRICT CLERK

Veronica Vaughn

**CAUSE NO. DC-19=14488**

| | |
|---|---|
| **ORIGIN BANCORP, INC., dba ORIGIN BANK,** | **IN THE DISTRICT COURT** |
| *Plaintiff,* | |
| v. | |
| **THE LASALLE GROUP, INC., WEST HOUSTON MEMORY CARE, LLC, LAKE SUPERIOR CONTRACTING, L.P., MITCHELL WARREN, AND MELVIN WARREN,** | **DALLAS COUNTY, TEXAS** |
| *Defendants.* | **101st JUDICIAL DISTRICT** |

---

## FIRST AMENDED PETITION

---

**SBAITI & COMPANY PLLC**

Mazin A. Sbaiti
Texas Bar No. 24058096
MAS@SbaitiLaw.com
Kevin N. Colquitt
Texas Bar No. 24072047
KNC@SbaitiLaw.com
J. Michal Zapendowski
Texas Bar No. 24075328
JMZ@SbaitiLaw.com
Dallas Renaissance Tower
1201 Elm Street – Suite 4010
Dallas, TX 75270
T: (214) 432-2899
F: (214) 853-4367

*Counsel for Plaintiff*

**COMES NOW** Plaintiff Origin Bancorp, d/b/a Origin Bank, and files its First Amended Petition to correct document format issues contained in the filed Original Petition.

## SUMMARY OF THE CASE

Plaintiff Origin Bank ("Origin") brings this action to recover unpaid principal and interest, as well as attorneys' fees and costs, owed on a series of loans to debtors LaSalle Group, Inc. ("LaSalle"), West Houston Memory Care, LLC ("West Houston" or "WHMC"), and Lake Superior Contracting, L.P. ("Lake Superior" or "LSC") (LaSalle, WHMC and LSC, each a "Debtor" or together the "Debtors"), and against guarantors LaSalle, Melvin Warren and Mitchell Warren (each a "Guarantor" and together, the "Guarantors").

At issue are three loans:

- A loan to Lake Superior Contracting, LP, current principal of $3,722,989.77, and maturity date January 1, 2020 (the "LSC Loan");

- A loan to the LaSalle Group, Inc., current principal of $3,722,989.77, and maturity date January 1, 2020 (the "LaSalle Loan"); and

- A loan to West Houston Memory Care, LLC, principal $7,753,335.15, and maturity date December 31, 2018 (the "WHMC Loan").

The total amount of principal indebtedness is $15,199,314.69. However, each of these loans is in default. As of September 5, 2018, the WHMC Loan is $210,800 in arrears, the LaSalle Loan is $195,841.09 in arrears, and the LSC Loan is $195,841.09 in arrears (altogether the "Past Due Amounts"). The Past Due Amounts have triggered default provisions in each of the loans' respective notes, loan modification agreements, and commercial security agreements. These default provisions grant Origin the right to accelerate the amount(s) owed and all accrued interest, default interest, and to seek attorneys' fees.

---

The principal and interest of the debts have further been guaranteed LaSalle, and each of Mitchell and Melvin Warren, which guarantees are secured by their various personal assets and wealth. Despite receiving written notices and demands, Defendants have refused to honor the commitments under the applicable contractual documents, thus necessitating this action.

## DISCOVERY LEVEL III

1.      Plaintiff intends to conduct discovery under Discovery Level 3 of the Texas Rules of Civil Procedure.

## PARTIES

2.      Plaintiff Origin Bancorp, Inc. dba Origin Bank is a Louisiana corporation with its principal place of business in Louisiana, is qualified to do business in Texas, and maintains offices throughout Dallas County, Texas, wherefrom many of the acts and events material to this action arose or were performed on behalf of Origin.

3.      Defendant LaSalle Group, Inc. is a Texas corporation with its principal place of business in Dallas County, Texas. It can be served at its place of business at 545 E John W Carpenter Freeway, #500, Irving, TX 75062, or via service on its principal Mitchell Warren, or on any other person authorized by it or by the State of Texas for service of process.

4.      Defendant West Houston Memory Care, LLC is a Delaware limit liability company with its principal place of business in Dallas County, Texas. It can be served with process at its place of business at 545 E John W Carpenter Freeway, #500, Irving, TX 75062, or via service on its principal Mitchell Warren, or on any other person authorized by it or by the State of Texas for service of process.

5.      Defendant Lake Superior Contracting, LP is a Texas limit partnership with its principal place of business in Dallas County. It can be served with process on its General Partner,

LaSalle, at its place of business at 545 E John W Carpenter Freeway, #500, Irving, TX 75062, or

via service on its principal Mitchell Warren, or on any other person authorized by it or by the State

of Texas for service of process.

6.  Defendant Mitchell W. Warren is a resident of the State of Texas and may be served

with process at his place of business, 545 E John W Carpenter Freeway, #500, Irving, TX 75062,

or at his home at 141 Cottonwood Drive, Coppell, Texas 75019.

7.  Melvin W. Warren is a resident of Florida and may be served with process at his

principal place of business 545 E John W Carpenter Freeway, #500, Irving, TX 75062 or at 125

Ramona Street, Suite 215, Pensacola, Florida 32502.

### VENUE AND JURISDICTION

8.  Dallas county is a proper venue under Section 15.002(a)(1) of the Texas Civil

Practice and Remedies Code because all or a substantial part of the acts or omissions giving rise

to Plaintiff's claims occurred in Dallas County, Texas.

9.  This Court has personal jurisdiction over each Defendant because, other than

Melvin Mitchell, each is a Texas resident or maintains its principal place of business in Dallas

County, Texas. This Court has personal jurisdiction over each Defendant because each has entered

into contracts and maintains a regular course of business in Texas with Origin Bank, and the

property that is the subject of this action is in Texas.

10.  This Court has subject matter jurisdiction because the amount in controversy is

within the jurisdictional limits of the Court.

### RULE 47

11.  The damages and moneys sought herein are within the jurisdiction limits of the

Court, and Plaintiff seeks monetary relief of over $1,000,000.

## CONDITIONS PRECEDENT

12.    All conditions precedent to relief or recovery by Plaintiff have been met or waived.

## FACTUAL ALLEGATIONS

13.    Plaintiff Origin Bancorp, Inc. dba Origin Bank is a financial holding company that provides products and services to customers in Texas, Louisiana and Mississippi.

14.    Founded in 1920 as "Community Trust Bank," it changed its charter name to Origin Bancorp, Inc. and its tradename to Origin Bank in 2015.

15.    Prior to the name change, when the bank was still Community Trust Bank, Origin entered into a series of loans and lines of credit with the Debtors.

### ORIGIN ENTERS INTO THREE LOANS WITH DEFENDANTS

**The LaSalle Loan**

16.    The original loan to LaSalle was for $1,000,000 and was issued on June 9, 2009, by Community Trust Bank.

17.    The loan was renewed on April 15, 2011, for $2,500,000; on May 31, 2012, for $3,000,000; on June 20, 2014, for $4,000,000; on June 30, 2015, again, for $4,000,000; on December 31, 2016, for $4,000,000; and then was modified and extended on April 23, 2018, for $3,722,989.77.

18.    Under the modification agreement with Origin, LaSalle agreed to make certain scheduled principal and interest payments.

19.    The principal of the LaSalle Loan is $3,722,989.77, with a maturity date of January 1, 2020.

20.    The LaSalle Loan is secured by a promissory note and a first lien security interest [senior to all shareholder loans] in all accounts receivable, notes and internal records, contract

rights, licenses, chattels paper, and general intangibles, including all equity interests and distributions.

21.     The loan was guaranteed by Melvin Warren, individually, and Mitchell Warren, individually.

## The LSC Loan

22.     The original loan to Lake Superior was for $1,000,000 and was issued on April 5, 2010, by Community Trust Bank, at its branch in Dallas County.

23.     The loan was renewed on April 15, 2011 for $1,500,000; on May 31, 2012 for $2,000,000; on June 20, 2014 for $4,000,000; on June 30, 2014 for $4,000,000; on December 31, 2016 for $4,000,000; and was modified and extended on March 31, 2018, for $3,722,989.77.

24.     Under the modification agreement with Origin, LSC agreed to make certain scheduled principal and interest payments.

25.     The principal of the LCS Loan is $3,722,989.77, with a maturity date of January 1, 2020.

26.     The LSC Loan is secured by a promissory note and a first lien security interest [senior to all shareholder loans] in all accounts receivable, notes and internal records, contract rights, licenses, chattels paper, and general intangibles, including all equity interests and distributions.

27.     The loan was guaranteed by LaSalle, Melvin Warren, individually, and Mitchell Warren, individually.

## The WHMC Loan

28.     The original loan to West Houston was for $8,550,000.00 and was issued on July 6, 2012, by Community Trust Bank.

29.     The loan was renewed on July 6, 2017 for $8,062,691.38, and was modified and extended on April 2, 2018, for $7,861,968.08. Under the modification agreement with Origin, WHMC agreed to make certain scheduled principal and interest payments.

30.     The principal owed on the WHMC loan is currently $7,753,335.15, with a maturity date of December 31, 2018.

31.     It is secured by a promissory note and first lien deed of trust on an assisted living facility located on Eldridge Road in Houston, Texas, and a first lien senior interest [superior to all shareholder liens] in all accounts receivable, contract rights, licenses, chattel paper, general intangibles, inventory, machinery, furniture, fixtures and equipment, etc.

32.     The loan was guaranteed by LaSalle, Melvin Warren, individually, and Mitchell Warren, individually.

## THE NOTE DEFAULT TERMS

33.     Each of the Debtors at the time the loans were originated was represented by Melvin Mitchell and Warren Mitchell, father and son, who also held themselves out as being the operators and managers of the respective Debtors' businesses.

34.     Origin has repeatedly been promised repayment, and in good faith agreed to renew and extend the loans as needed.

35.     Each of the loans' promissory notes provides that if "Borrower fails to make any payment when due under this Note" then that is a "Payment Default."

36.     Each of the loans' promissory notes provides that if "Borrower fails to comply with or to perform any other term, obligation, covenant, or condition contained in this Note or in any of the related documents[,] or to comply with or to perform any term, obligation, covenant, or

condition contained in any other agreement between Lender and Borrower," then that is likewise a default.

37.     Each of the loans' promissory notes provides that if "any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either nor or at the time made or furnished[,] or becomes false or misleading at any time thereafter," then that is also a default.

38.     Each of the loans' promissory notes provides that if a "material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of repayment or performance of this Note is impaired," then that is a separate event of default.

39.     Each of the promissory notes further states that:

> Upon default, Lender may declare the entire indebtedness, including the unpaid balance under this Note, all accrued unpaid interest and all other amounts, costs, and expenses for which Borrower is responsible under this Note or any other agreement with Lender pertaining to this loan, immediately due, without notice, and then Borrower will pay that amount.

40.     Each of the notes further provides for attorneys' fees and costs for enforcing the Notes and the related security instruments.

41.     None of the subsequent agreements between the parties regarding any of these loans amended or modified these salient provisions.

42.     As of September 5, 2018, the WHMC Loan is $210,800 in arrears, the LaSalle Loan is $195,841.09 in arrears, and the LSC Loan is $195,841.09 in arrears (altogether the "Past Due Amounts").

43.     The Past Due Amounts have triggered default provisions in each of the loans' respective notes. These default provisions grant Origin the right to accelerate the amount(s) owed and all accrued interest, default interest, and to seek attorneys' fees.

## THE AGREEMENT OF GUARANTORS

44.     On March 31, 2018, LaSalle, Mitchell Warren and Melvin Warren entered into an agreement with Origin titled "Agreement of Guarantors" wherein they again agreed to be the guarantors of the three loans.

45.     The purpose of the Agreement of Guarantors was to induce Origin to make the loan modifications in 2018 that were made to the LaSalle Loan, the WHMC Loan and the LSC Loan.

46.     In connection with executing the Agreement of Guarantors, Origin was assured that the Guarantors therein had sufficient assets to substantiate their guarantees to Origin, namely, their equity stakes in several businesses from which they expected to receive funds.

47.     Also, in connection therewith, each of the Guarantors established lock boxes at Origin wherein they represented they would deposit any distributions or moneys received from any of the businesses they owned. The Guarantors obligated themselves to provide monthly reports of the net worth of the equity interests provided to Origin.

48.     The Agreement of Guarantors independently provides that any default in the WHMC Loan shall be deemed a default of the LaSalle and LSC loans. It further provides that a default of either the LaSalle or the LSC Loans shall be deemed a default of both. Any such default will allow Origin to accelerate both the LaSalle and LSC Loans.

49.     The Guarantors have breached the above provisions either directly or constructively.

50.     Guarantors have not met the reporting requirements and have not caused distributions to be deposited in the lock boxes. To date, no such distributions have been deposited. The purpose of the lock boxes was to ensure repayment. Upon information and belief, Guarantors

caused the equity interests to not issue any "distributions" to equity holders so as to avoid the terms of the Agreement of Guarantors, thus frustrating the purpose thereof.

51.    Under the promissory notes' default terms, the breach of the Agreement of Guarantors is a default of each promissory note. These defaults grant Origin the right to accelerate the amount(s) owed and all accrued interest, default interest, and to seek attorneys' fees.

### ORIGIN BANK SENDS NOTICE OF INTENT TO ACCELERATE AND CURE

52.    The WHMC Loan went into default on July 6, 2018, when WHMC missed its scheduled payment of $62,500 on July 5, 2018.

53.    The LaSalle Loan went into default on July 2, 2018, when it missed its scheduled payment of $125,000 on July 1, 2018.

54.    The LSC Loan went into default on July 2, 2018, when it missed its scheduled payment of $125,000 on July 1, 2018.

55.    Origin sent several notices for payment, and notices of late fees and interest.

56.    Origin learned that the Defendants are contemplating a sale of assets to a new entity. However, no assurances have been forthcoming, when requested, that the full amount of indebtedness will be satisfied upon such sale, thus risking dissipation of assets.

57.    On September 7, 2018, Origin sent a notice of delinquency and demand to all Guarantors to perform under their guarantee agreements and make all accounts current by September 14, 2018.

58.    Guarantors and Debtors failed to comply with their contractual obligations and would not commit to complying in a timely fashion.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### AGAINST EACH DEBTOR
### BREACH OF CONTRACT

59.     Origin realleges and incorporates the foregoing Factual Allegations as if fully set forth herein.

60.     Origin has contractual agreements with each Debtor for a debt secured by a promissory note, personal guarantees and commercial guarantees, as well as subsequent agreements for renewals, extensions, and modifications which place the onus of performance and timely payment on each respective Debtor.

61.     Each Debtor is in default of each of its respective loan agreements.

62.     WHMC is in default for having missed its required principal and interest payments there were due on July 5, 2018, August 5, 2018, and September 5, 2018. It has been assessed late fees.

63.     LaSalle is in default for having missed its required and scheduled principal payment on July 1, 2018, and its scheduled interest payments on July 5, 2018, August 5, 2018, and September 5, 2018. LaSalle has also been assessed late fees.

64.     LSC is in default having missed its required and scheduled principal payment on July 1, 2018, and its scheduled interest payments on July 5, 2018, August 5, 2018, and September 5, 2018. LaSalle has also been assessed late fees.

65.     Origin is entitled to full payment of all Past Due Amounts, any accruing interest and default interest under these agreements, and all principal.

66.     Origin thus seeks damages, attorneys' fees, expenses and costs of suit, and all other remedies to which the Court deems it is justly entitled under law or equity.

### SECOND CAUSE OF ACTION
### AGAINST EACH GUARANTOR
### ' BREACH OF CONTRACT

67.     Origin realleges and incorporates the foregoing Factual Allegations as if fully set forth herein.

68.     Origin has contractual agreements with each Guarantor for each of the Loans.

69.     Each Guarantor is in breach of its Guaranty agreements and the "Agreement of Guarantors."

70.     The Guarantee agreements do not require Origin to exercise its rights against any security or to seek payment from any Debtor prior to exercising its rights to seek payment from any Guarantor.

71.     Origin is entitled to full payment of all Past Due Amounts, any accruing interest and default interest under the agreements, and all outstanding principal, and may seek such payment from Guarantors.

72.     Origin thus seeks damages, attorneys' fees, expenses and costs of suit, and all other remedies to which the Court deems it is justly entitled under law or equity.

### THIRD CAUSE OF ACTION
### AGAINST WEST HOUSTON
### APPOINTMENT OF RECEIVER

73.     Origin realleges and incorporates the foregoing Factual Allegations as if fully set forth herein.

74.     Origin's deed of trust provides the right to appoint a receiver over the collateral securing the debt from West Houston. The deed of trust further provides Origin the right to appoint a receiver to collect all rents and preserve or dispose of the collateral to repay Origin, irrespective of whether the value of the collateral exceeds the amount of indebtedness.

75.    Tex. Civ. Prac. Rem. Code § 64.001 provides for the appointment of a receiver in an action by a creditor to subject any property or funds to his claim, in an action by a mortgagee for the foreclosure of the mortgage and/or sale of the mortgaged property, and in any other case in which receivers are appointed under the rules of equity.

76.    Tex. Bus Org. Code § 11.403 provides for the appointment of a receiver where, as here, the mortgagee of the property is in default and foreclosure is proper but there is a substantial risk that the property is insufficient to discharge the debt, and in any other case in which receivers are appointed under the rules of equity.

77.    The appointment of a receiver is necessary to conserve the property of the Debtors and avoid the loss of collateral sufficient to secure the debt and ensure repayment, which would irreparably harm Origin. Absent such repayment, Origin will be left with no adequate remedies to satisfy a judgment obtained herein.

## FOURTH CAUSE OF ACTION
## AGAINST LAKE SUPERIOR
## APPOINTMENT OF RECEIVER

78.    Origin realleges and incorporates the foregoing Factual Allegations as if fully set forth herein.

79.    Tex. Civ. Prac. Rem. Code § 64.001 provides for the appointment of a receiver in an action by a creditor to subject any property or funds to his claim, in an action by a mortgagee for the foreclosure of the mortgage and/or sale of the mortgaged property, and in any other case in which receivers are appointed under the rules of equity.

80.    Tex. Bus Org. Code § 11.403 provides for the appointment of a receiver where, as here, the mortgagee of the property is in default and foreclosure is proper but there is a substantial

risk that the property is insufficient to discharge the debt, and in any other case in which receivers are appointed under the rules of equity.

81.     Origin's Commercial Security Agreement with Lake Superior provides for a security interest in the "Collateral" which is defined as "All chattel paper, accounts, notes receivable, interest receivable, contract rights, licenses and general intangibles, including but not limited to distributions from any and all partnership interests and/or limited liability company interests, whether any of the foregoing is owned nor or acquired later, all accessions, additions, replacements, and substitutions relating to any replacements, and substitutions relating to any of the foregoing, all proceeds related to any of the foregoing, including insurance, general intangibles and other account proceeds."

82.     "Collateral" further includes all records and data that reflect the existence of Collateral or in any way related thereto.

83.     The Commercial Security Agreement entitles Origin to request that the Court appoint a receiver "to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and to apply the proceeds, over and above the cost of receivership against indebtedness."

84.     Origin's right to a receiver exists irrespective of whether the value of the collateral exceeds the amount of indebtedness.

85.     Origin, as the lender, has all rights to any mail of Lake Superior and to direct its operations.

86.     Origin is entitled to have a receiver appointed over Lake Superior to ensure proper payment of the debts owed by Lake Superior and proper management, handling and disposition of the Collateral until Origin's debts are paid in full.

87.     The appointment of a receiver is necessary to conserve the property of the Debtors and avoid the loss of collateral sufficient to secure the debt and ensure repayment, which would irreparably harm Origin. Absent such repayment Origin will be left with no adequate remedies to satisfy a judgment obtained herein.

### FIFTH CAUSE OF ACTION
### AGAINST LASALLE
### APPOINTMENT OF RECEIVER

88.     Origin realleges and incorporates the foregoing Factual Allegations as if fully set forth herein.

89.     Tex. Civ. Prac. Rem. Code § 64.001 provides for the appointment of a receiver in an action by a creditor to subject any property or funds to his claim, in an action by a mortgagee for the foreclosure of the mortgage and/or sale of the mortgaged property, and in any other case in which receivers are appointed under the rules of equity.

90.     Tex. Bus Org. Code § 11.403 provides for the appointment of a receiver where, as here, the mortgagee of the property is in default and foreclosure is proper but there is a substantial risk that the property is insufficient to discharge the debt, and in any other case in which receivers are appointed under the rules of equity.

91.     Origin's Commercial Security Agreement with LaSalle provides for a security interest in the "Collateral" which is defined as "All chattel paper, accounts, notes receivable, interest receivable, contract rights, licenses and general intangibles, including but not limited to distributions from any and all partnership interests and/or limited liability company interests,

whether any of the foregoing is owned nor or acquired later, all accessions, additions, replacements, and substitutions relating to any replacements, and substitutions relating to any of the foregoing, all proceeds related to any of the foregoing, including insurance, general intangibles and other account proceeds."

92. "Collateral" further includes all records and data that reflect the existence of Collateral or in any way related thereto.

93. The Security Agreement entitled Origin to request that the Court appoint a receiver "to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the rents from the Collateral and to apply the proceeds, over and above the cost of receivership against indebtedness."

94. Origin's right to a receiver exists irrespective of whether the value of the collateral exceeds the amount of indebtedness.

95. Origin, as the lender, has all rights to any mail of LaSalle and to direct its operations.

96. Origin is entitled to have a receiver appointed over LaSalle to ensure proper payment of the debts owed by LaSalle and the proper management, handling and disposition of the Collateral until Origin's debts are paid in full.

97. The appointment of a receiver is necessary to conserve the property of the Debtor and avoid the loss of collateral sufficient to secure the debt and ensure repayment, which would irreparably harm Origin. Absent such repayment, Origin will be left with no adequate remedies to satisfy a judgment obtained herein.

### SIXTH CAUSE OF ACTION
### AGAINST GUARANTORS
### APPOINTMENT OF RECEIVER

98. Origin realleges and incorporates the foregoing Factual Allegations as if fully set forth herein.

99. Tex. Civ. Prac. Rem. Code § 64.001 provides for the appointment of a receiver in an action by a creditor to subject any property or funds to his claim in an action by a mortgagee for the foreclosure of the mortgage and/or sale of the mortgaged property, and in any other case in which receivers are appointed under the rules of equity.

100. Tex. Bus Org. Code § 11.403 provides for the appointment of a receiver where, as here, the mortgagee of the property is in default and foreclosure is proper but there is a substantial risk that the property is insufficient to discharge the debt, and in any other case in which receivers are appointed under the rules of equity.

101. The Agreement of Guarantors provides that Mitchell Warren and Melvin Warren assign all distributions from any and all equity ownership to Origin to be placed in a lock box.

102. In that Agreement each Guarantor represented and warranted that the equity interests held by each were subject to periodic equity distributions. This, it appears, was either false when made given that no distributions have been made to date in the past six months, or evidences the fact that one or more Guarantors have caused said entities to not issue distributions so as to frustrate Origin's security interest and ability to secure repayment.

103. Melvin Warren and Mitchell Warren have not fulfilled their obligations under the agreement, nor have they fulfilled their obligations to update Origin monthly on the net worth of their respective equity holdings under the Agreement of Guarantors.

104. The Agreement of Guarantors further grants Origin the right to act for each Guarantor's ownership with each entity, and that such entity is authorized by each Guarantor to deal with Origin or its nominee as if it were dealing with the Guarantor.

105. Origin's right to a receiver exists to avoid fraud and dissipation of assets sufficient to secure or satisfy Guarantors' obligations under the Debts.

106. Origin is entitled to have a receiver appointed over Guarantors' equity interests to ensure proper payment of the debts owed by Debtors and Guarantors and the proper management, handling and disposition of collateral until Origin's debts are paid in full.

107. The appointment of a receiver is necessary to conserve the property of the Debtors and the Guarantors and avoid the loss of collateral sufficient to secure the debt and ensure repayment, which would irreparably harm Origin. Absent such repayment Origin will be left with no adequate remedies to satisfy a judgment obtained herein.

**SIXTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**
**UNJUST ENRICHMENT**

108. Origin realleges and incorporates the foregoing Factual Allegations as if fully set forth herein.

109. Defendants are in possession of moneys and property derived from their loans from Origin, and their retention of such money and property would be unjust whilst Origin's debts remain unsatisfied.

110. Origin seeks restitution and disgorgement of all ill-gotten gains in an amount sufficient to compensate it for all damages.

### SEVENTH CAUSE OF ACTION
### AGAINST ALL DEFENDANTS
### COMMON LAW FRAUD

111.    Origin realleges and incorporates the foregoing Factual Allegations as if fully set forth herein.

112.    In the Agreement of Guarantors, Guarantors represented and warranted on their own behalf and on behalf of Debtors that the equity interests owned by Guarantors were subject to periodic distributions from their operations.

113.    Origin relied on these representations and warranties as an inducement to extending the loans and giving new terms.

114.    Origin's reliance was reasonable given the extensive nature of the ownership interests and its general knowledge or understanding about the standing of the Guarantors.

115.    The representations and warranties were statements of fact that were, upon information and belief, false when made.

116.    The makers of the representations and warranties were in possession of the truth, and therefore made the statements with knowledge of their falsity or with reckless ignorance of their falsity.

117.    Origin has suffered damages in the form of lost principal and interest, as well as consequential damages.

118.    Origin is entitled to damages and exemplary damages.

### ATTORNEYS' FEES AND COSTS OF SUIT

119.    Origin respectfully requests attorneys' fees and costs of suit as provided for in the Debtors' promissory notes, which are secured by the Guarantors' guaranty agreements, and attorneys' fees under Tex. Civ. Prac. Rem. Code § 38.001.

## **REQUESTED RELIEF**

120.     WHEREFORE, PREMISES CONSIDERED, Plaintiff asks that the Defendants be

cited to appear and answer herein and that, upon final trial of this matter, Plaintiff have and recover

judgment against Defendants for the following relief:

a.   Actual damages as determined by the trier of fact;

b.   Consequential damages;

c.   Lost interest;

d.   Exemplary damages;

e.   Attorneys' fees;

f.   Litigation and filing costs;

g.   Expert witness fees, document fees, and other expenses arising from this litigation;

h.   Interest;

i.   All other relief at equity or at law to which Origin is reasonably entitled.

Dated: January 28, 2019

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
MAS@sbaitilaw.com
**Kevin Colquitt**
Texas Bar No. 24072047
KNC@sbaitilaw.com
J. Michal Zapendowski
Texas Bar No. 24075328
JMZ@SbaitiLaw.com
1201 Elm Street – Suite 4010
Dallas, TX 75270
T: (214) 432-2899
F: (214) 853-4367

*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record in accordance with the Texas Rules of Civil Procedure on this the 28th day of January, 2018.

*/s/ Mazin A. Sbaiti*
Mazin A. Sbaiti

---

First Amended Petition

Page 21

# Exhibit 6

Margaret Thomas
FILED
DALLAS COUNTY
5/17/2019 11:13 AM
FELICIA PITRE
DISTRICT CLERK

**CAUSE NO. DC-18-14477**

| | |
|---|---|
| **ORIGIN BANCORP, INC.,** *dba* **ORIGIN BANK**, | **IN THE DISTRICT COURT** |
| *Plaintiff* | |
| **v.** | |
| **THE LASALLE GROUP, INC., WEST HOUSTON MEMORY CARE, LLC, LAKE SUPERIOR CONTRACTING, L.P., MITCHELL WARREN, AND MELVIN WARREN,** | **DALLAS COUNTY, TEXAS** |
| *Defendants*. | **101st JUDICIAL DISTRICT** |

---

### PLAINTIFF'S MOTION TO SEVER CLAIMS AGAINST THE LASALLE GROUP, INC. AND WEST HOUSTON MEMORY CARE, LLC BECAUSE THEY ARE IN BANKRUPTCY

---

Plaintiff Origin Bancorp, d/b/a Origin Bank brings this motion, pursuant to Tex. R. Civ. P. 41, to sever the claims against The LaSalle Group, Inc. ("LaSalle") and West Houston Memory Care, LLC ("West Houston") because these entities have declared bankruptcy, and would respectfully show the Court:

**I.**

### ARGUMENT

Tex. R. Civ. P. 41 states that "[a]ny claim against a party may be severed and proceeded with separately." "This rule grants the trial court broad discretion in the matter of severance and consolidation of causes." *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W. 2d 652, 658 (Tex. 1990).

In this instance, the Court should sever the claims against bankrupt entities LaSalle and West Houston so that the claims against the other Defendants can proceed without violating the U.S. Bankruptcy Court's automatic stays. The Fifth District Court of Appeals has specifically noted that: "Severing a claim against a bankrupt party into a new cause of action does not violate the automatic stay provisions of the bankruptcy code[.]" *Hoover v. Hooker*, No. 05-00-00268-CV, 2002 Tex. App. LEXIS 4933, at *6 (Tex. App.—Dallas July 9, 2002).

Indeed, severing claims against a bankrupt defendant in order to allow the remainder of the lawsuit to proceed without violating the bankruptcy stay is exceedingly common. *See, e.g., Weilbacher v. Craft*, No. 05-13-01252-CV, 2014 Tex. App. LEXIS 12497, at *2 n.1 (Tex. App.—Dallas Nov. 19, 2014) ("After DDC filed for bankruptcy protection, litigation against it was stayed, and Weilbacher's claims against Jones were severed into a separate lawsuit."); *Kondos Entm't v. Quinney Elec.,* No. 04-96-00251-CV, 1999 Tex. App. LEXIS 9535, at *2 (Tex. App.—San Antonio Dec. 29, 1999) ("During the pendency of the suit, V-Ball filed bankruptcy and was severed from the state court action."); *Bird v. Kornman*, 152 S.W.3d 154, 156 (Tex. App.—Dallas 2004) ("After submission of this appeal, Heritage filed for bankruptcy protection. By separate order, we severed Bird's appeal against Heritage[.]"); *In re Stern*, 436 S.W.3d 41, 43 (Tex. App.—Houston [14th Dist.] 2014) ("Rueben filed a motion to sever his claims from those of Gulf Coast, so that his claims could proceed without having to wait for resolution of the bankruptcy proceedings. The trial court granted severance, ordering that the severed case proceed under a distinct style and cause number."); *BJVSD Bird Family P'ship, L.P. v. Star Elec., L.L.C.,* 413 S.W.3d 780, 782 (Tex. App.—Houston [1st Dist.] 2013) ("On April 6, 2011, Triton 88 filed for bankruptcy. On April 7, 2011, the trial court signed an order severing Triton 88 and

leaving Triton 2000 as the sole judgment debtor in the underlying case, while the severed cause was stayed pending Triton 88's bankruptcy proceedings.").

## II.

## CONCLUSION

For the foregoing reasons, this Court should sever Plaintiff's lawsuit against The LaSalle Group, Inc. and West Houston Memory Care, LLC and order that the claims against these bankrupt entities be designated as a separate proceeding under a new caption and cause number, and that the new proceeding be stayed pending the resolution of these entities' bankruptcy proceedings.

Dated: June 17, 2019

Respectfully submitted,

**SBAITI & COMPANY PLLC**

*/s/ Mazin A. Sbaiti*
**Mazin A. Sbaiti**
Texas Bar No. 24058096
MAS@sbaitilaw.com
**Kevin N. Colquitt**
Texas Bar No. 24072047
KNC@sbaitilaw.com
**Katherine L. Schneider**
Texas Bar No. 24103923
KLS@sbaitilaw.com
**J. Michał Zapendowski**
Texas Bar No. 24075328
jmz@sbaitilaw.com
Dallas Renaissance Tower
1201 Elm Street – Suite 4010
Dallas, TX 75270
T: (214) 432-2899
F: (214) 853-4367

**Counsel for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record in accordance with the Texas Rules of Civil Procedure on this 17th day of June, 2019.

*/s/ Mazin A. Sbaiti*

Mazin A. Sbaiti

# Exhibit 7

CAUSE NO. DC-18-14477

| | | |
|---|---|---|
| ORIGIN BANCORP, INC., dba ORIGIN BANK, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| vs. | § § | |
| THE LASALLE GROUP, INC., WEST HOUSTON MEMORY CARE, LLC, LAKE SUPERIOR CONTRACTING, L.P., MITCHELL WARREN, AND MELVIN WARREN, | § § § § § § | DALLAS COUNTY, TEXAS |
| Defendants. | § | 101ST JUDICIAL DISTRICT |

## ORDER DENYING MOTION TO SEVER AND STAYING CASE

Came on for consideration this 16th day of July, 2019, Plaintiff's Motion to Sever Claims against The LaSalle Group, Inc. and West Houston Memory Care, LLC Because They Are In Bankruptcy ("Motion to to Sever"). The Court, having considered the Motion to Sever, all responses thereto, any replies, and argument of counsel, finds that the Motion to Sever should be, and hereby is, **DENIED**.

It is therefore **ORDERED, ADJUDGED, AND DECREED** the Motion to Sever is hereby **DENIED**.

It is further **ORDERED, ADJUDGED, AND DECREED** that this lawsuit is hereby stayed during the pendency of The LaSalle Group, Inc. and West Houston Memory Care, LLC bankruptcy cases, and the Clerk of the Court shall remove this case from the active docket of pending cases subject to further order of this Court.

Signed on August 1, 2019

THE HONORABLE JUDGE STACI WILLIAMS

ORDER DENYING MOTION TO SEVER AND STAYING CASE – Page 1

# Service List

**Service List-Relief from Stay**
**LaSalle Group/West Houston**
**19-31484-sgj11**
**#6029 (Origin Bank)**

The LaSalle Group, Inc., West Houston
Memory Care, LLC, et al.
Attn: Mitchell Warren
545 E. John Carpenter Frwy., Suite 500
Irving, TX 75062

United States Trustee
1100 Commerce Street, Room 976
Dallas, TX 75242

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

The LaSalle Group, Inc., et al.
c/o Vickie L. Driver/C. Stephenson
Crowe & Dunlevy, PC
1919 McKinney Ave., Suite 100
Dallas, TX 75201

The LaSalle Group, Inc., et al.
c/o Christopher M. Staine
Crowe & Dunlevy, PC
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102

The LaSalle Group, Inc., et al.
c/o William H. Hoch III
Crowe & Dunlevy, PC
Braniff Building
324 North Robinson Ave., Suite 100
Oklahoma City, OK 73102

CRO for the Debtors
Karen G. Nicolaou /E. White/C. Morris
Harney Management Partners, LLC
569 Trianon St.
Houston, TX 77024

Origin Bank/Community Trust Bank
Dallas Financial Center – Business
8222 Douglas Ave., Suite 1
Dallas, TX 75225

Harris County Tax Assessor
PO Box 3547
Houston, TX 77253

Harris County Improvement District No. 4
PO Box 73109
Houston, TX 77273

Texas Dept. of Health and Human Services
4900 N. Lamar Blvd.
Austin, TX 78751-2316

Office of the Attorney General
Main Justice Bldg. Room 5111
10th and Constitution Avenue NW
Washington, DC 20530

Office of the United States Attorney
1100 Commerce St., 3rd Floor
Dallas, TX 75242-1699

US Dept. of Health & Human Services
Office of the Secretary
200 Independence Avenue SW
Washington, DC 20201

Texas Attorney General
Attn: Ken Paxton
300 W 15th St.
Austin, TX 78701

Oklahoma Attorney General
Mike Hunter
313 NE 21st St.
Oklahoma City, OK 73105

South Carolina Attorney General
Alan Wilson
Rembert C. Dennis Office Bldg.
1000 Assembly St., Room 519
Columbia, SC 29211-1549

Florida Attorney General
Ashley Moody
The Capitol
PL-01
Tallahassee, FL 32399-1050

Wisconsin Attorney General
Josh Kaul
114 East State Capitol
Madison, WI 53707-7857

Georgia Attorney General
Chris Carr
40 Capital Square SW
Atlanta, GA 30334-1300

North Carolina Attorney General
Josh Stein
Dept. of Justice
PO Box 629
Raleigh, NC 27602-0629

Illinois Attorney General
Kwame Raoul
James R. Thompson Center
100 W. Randolph St.
Chicago, IL 60601

Kansas Attorney General
Derek Schmidt
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612-1597

Missouri Attorney General
Eric Schmitt
Supreme Court Blvd.
207 W High St.
Jefferson City, MO 65101

Ascentium Capital LLC
PO Box 301593
Dallas, TX 75303-1593

De Lage Landen
PO Box 41602
Philadelphia, PA 19101-1602

SHI International Corp.
1111 Old Eagle School Rd.
Wayne, PA 19087

TMA Apartments, Inc.
1110 Aspen Ct.
Rockwall, TX 75087

Origin Bancorp Inc.
Mazan Sbaiti
Sbaiti and Co PLLC
1201 Elm St., Suite 4010
Dallas, TX 7570

Melvin Warren
c/o Jason L. Sanders
Sanders Collins PLLC
325 N. St. Paul St., Suite 3100
Dallas, TX 75201

Michell Warren
c/o Robert C. Vilt
Vilt and Associates, PC
5177 Richmond Ave., Suite 1142
Houston, TX 77056

LaSalle/West Houston/Mitchell Warren
c/o Jason A. LeBouef
Vilt and Associates, PC
2435 North Central Expwy, Suite 1200
Richardson, TX 75080

# LIST OF TWENTY LARGEST UNSECURED CREDITORS FOR WEST HOUSTON MEMORY CARE, LLC

Sysco
PO Box 560700
Lewisville, TX 75056-0700

Ryan, LLC
PO Box 848351
Dallas, TX 75284-8351

A Place for Mom, Inc.
PO Box 913241
Denver, CO 80291-3241

Brightview Landscape Services
PO Box 31001-2463
Pasadena, CA 91110-2463

ReachLocal Inc.
Kelly Barker
6111 Plano Pkwy, Suite 1000
Plano, TX 75093

Illustratus
8455 Lenexa Dr.
Lenexa, KS 66214

McKesson Corporation
McKesson Medical Surgical
PO Box 204786
Dallas, TX 75320-4786

PowerSecure Service, Inc.
377 Maitland Ave., Suite 1010
Altamonte Springs, FL 32701

CFP Fire Protection
153 Technology Dr., Suite 200
Irvine, CA 92618

Westfield Bank FSB
PO Box 668
Westfield Center, OH 44251-0668

Brusniak PLLC
PO Box 802882
Dallas, TX 75380-2882

Rentokil Steritech
PO Box 13848
Reading, PA 19612

Sterling Talent Solutions
Newark Post Office
PO Box 36482
Newark, NJ 07193-6482

Coinmach Corporation
PO Box 27288
New York, NY 10087-7288

Omnicare Inc.
Dept. 781668
PO Box 78000
Detroit, MI 48278-1668

Parkway/Eldridge Rd Prop Owners
Associates Inc.
55 Waugh Dr., Suite 1111
Houston, TX 77007

# LIST OF TWENTY LARGEST UNSECURED CREDITORS FOR THE LASALLE GROUP, INC.

Hunton Andrews Kurth, LLP
PO Box 301276
Dallas, TX 75303-1276

O'Brien Architects Inc.
Attn: Kathy Filbert
5310 Harvest Hill, Suite 136 LB 161
Dallas, TX 75230

Origin Bank
3838 Oak Lawn Ave., Suite P100
Dallas, TX 75219

Cigna Health and Life Insurance Co.
PO Box 644546
Pittsburgh, PA 15264-4546

CliftonLarsonAllen LLP
Attn: Connie Bryant
PO Box 679334
Dallas, TX 75267-9334

CNA Insurance
Paragon Asset Recovery Services Inc.
PO Box 6065-02
Hermitage, PA 16148-1065

Curtis Group Architects Ltd.
5000 Quorum Dr., Suite 500
Dallas, TX 75254

Dixon Hughes Goodman LLP
Attn: Diane Lacasse
4350 Congress St., Suite 900
PO Box 602828
Charlotte, NC 28260-2828

Ogletree, Deakins, et al.
PO Box 89
Columbia, SC 29202

The Village at Silver Sage
6363 Woodway Dr., Suite 410
Houston, TX 77057

VMG Health
PO Box 774046
Dallas, TX 75267-4046

Bell Nunnally
3232 McKinney Ave., Suite 1400
Dallas, TX 75204-2429

Westfield Bank FSB
PO Box 668
Westfield Center, OH 44251-0668

SAS Architects & Planners
630 Dundee Rd., Suite 110
Northbrook, IL 60062

Capital Center Land Condo Assn Inc.
4077 Taminami Trail North, Suite D-201
Naples, FL 32502

Cannon & Cannon Inc.
8550 Kingston Pike
Knoxville, TN 37919

Monster Worldwide Inc.
Attn: John Hunt
PO Box 90364
Chicago, IL 60696-0364

Juan Escamilla
Dba Escamilla Co.
15420 West Hardy Rd.
Houston, TX 77060

Popp Hutcheson PLLC
1301 South Mopac, Suite 430
Austin, TX 78746

GSI Engineering, LLC
4503 East 47th St. South
Wichita, KS 67210-1651

## NOTICES OF APPEARANCE

Silverado Interests Holdings, LLC
c/o Mike Massad/Jason Enright
Winstead PC
500 Winstead Building
2728 N. Harwood St.
Dallas, TX 75201

Veritex Community Bank (fka Green Bank)
c/o Stephen Lemmon/Rhonda Mates
Streusand Landon Ozburn & Lemmon LLP
1801 S. MoPac Expwy, Suite 320
Austin, TX 78746

BOKF, N.A. (dba Bank of Texas)
Cliff Wade/Garrett Roberts
MBL Law
17330 Preston Rd., Suite 160B
Dallas, TX 75252

Irving ISD/Dallas County
c/o Laurie Spindler
Linebarger Goggan et al.
2777 N. Stemmons Frwy, Suite 1000
Dallas, TX 75207

Denton County/Williamson County
c/o Tara LeDay
McCreary Veselka, et al.
PO Box 1269
Round Rock, TX 78680

TLG Family Management, LLC
c/o Katharine Battaia Clark
Hedrick Kring PLLC
1700 Pacific Ave., Suite 4650
Dallas, TX 75201

First National Bank of Wichita Falls
c/o Kenneth Johnston/G. Barber/S. Affleck
Johnston Pratt PLLC
1717 Main St., Suite 3000
Dallas, TX 75201

NHI-REIT of TX-IL, LLC
c/o Trey Monsour/Savanna Barlow
Polsinelli PC
2950 N. Harwood St., Suite 2100
Dallas, TX 75201

NHI-REIT of TX-IL, LLC
c/o David Gordon
Polsinelli PC
1202 West Peachtree St. NW, Suite 1100
Atlanta, GA 30309

Cypress-Fairbanks ISD/ Montgomery County/
Fort Bend County/ Harris County
c/o John P. dillman
Linebarger Goggan, et al.
PO Box 3064
Houston, TX 75242

Hancock Whitney Bank
c/o Leann O. Moses
Carver, Darden et al.
1100 Poydras St., Suite 3100
New Orleans, LA 70163

Texas Health and Human Services Commission
c/o J. Casey Roy, Asst. Attorney General
Texas Attorney General's Office
Bankruptcy & Collections Div.
PO Box 12548 – MC 008
Austin, TX 78711-2548

Russell W. Mills
Bell Nunnally & Martin LLP
2323 Ross Ave., Suite 1900
Dallas, TX 75201

Ad Hoc Group of Creditors
c/o Steven K. Kortanek
Drinker Biddle & Reath LLP
222 Delaware Ave., Suite 1410
Wilmington, DE 19807-1621

First Secure Community Bank
c/o David Campbell, K. Annello, E. Pierce
Underwood Perkins, PC
Two Lincoln Centre
5420 LBJ Freeway, Suite 1900
Dallas, TX 75240

United Community Bank
c/o Deborah Perry
Munsch Hardt Kopf & Harr
500 N. Akard St., Suite 3800
Dallas, TX 75201

Susan N. Goodman, RN JD
(Patient Care Ombudsman)
Pivot Health Law, LLC
PO Box 69734
Oro Valley, AZ 85737

First Secure Community Bank
c/o Eric S. Rein/John W. Guzzardo
Horwood Marcus & Berk Chartered
500 W. Madison St., Suite 3700
Chicago, IL 60661

TLG Family Management for the Benefit
of the Bunker Hill Building
9525 Katy Freeway, Suite 215
Houston, TX 77024

U.S. Foods, Inc.
c/o Trinitee Green
Bryan Cave et al.
161 North Clark St., Suite 4300
Chicago, IL 60601

TCF National Bank, N.A.
c/o J. Mark Chevallier
McGuire Craddock et al.
2501 N. Harwood, Suite 1800
Dallas, TX 75201

Fannie Mae
c/o Michael Cooley/K. Aurzada/L. Robin
Reed Smith LLP
2501 N. Harwood, Suite 1700
Dallas, TX 75201

Ad Hoc Group of Creditors
c/o Vincent Slusher
Drinker Biddle & Reath LLP
1717 Main St., Suite 5400
Dallas, TX 75201

Melvin W. Warren, Jr.
c/o John P. Lewis Jr.
1412 Main St., Suite 210
Dallas, TX 75202

Keybank National Association
c/o Jason Katz
Hiersche Hayward et al.
15303 Dallas Parkway, Suite 700
Addison, TX 75002-4610

Branch Banking & Trust Co.
c/o Jason Rodriguez
Higier Allen & Lautin PC
The tower at Cityplace
2711 N. Haskell Ave., Suite 2400
Dallas, TX 75204

Cinco/Shadow Creek Ranch Comm. Cypress O.A.
c/o Curtis W. McCreight
Hoover Slovacek LLP
Galleria tower II
5051 Westheimer, Suite 1200
Houston, TX 77056

First American Payment Systems, LP
c/o Robert W. Jones/Brian J. Smith
Holland & Knight LLP
200 Crescent Ct., Suite 1600
Dallas, TX 75201

BMO Harris Bank N.A.
c/o Mia D. D'Andrea
Chapman and Cutler LLP
111 W. Monroe St.
Chicago, IL 60603

TCF National Bank, N.A.
c/o Gustaf R. Andreasen
Howard & Howard
450 W. 4th St.
Royal Oak, MI 48067

Richardson ISD, DCURD, Crowley ISD,
Arlington ISD, City of Haltom City
c/o Eboney Cobb
Perdue Brandon et al.
500 E. Border St., Suite 640
Arlington, TX 76010

Ad Hoc Group of Creditors
c/o James H. Millar
Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Floor
New York, NY 10036-2714

Mitchell Warren
c/o Mark Petrocchi
Griffith Jay & Michel LLP
2200 Forest Park Blvd.
Fort Worth, TX 76110

Keybank National Association
c/o Bonnie Rothell/J. Rodriguez
Morris Manning & Martin LLP
1401 Eye St. NW, Suite 600
Washington, DC 20005

Missouri Dept. of Revenue
c/o John Whiteman
Special Asst. Attorney General
General counsel's Office
PO Box 475
Jefferson City, MO 65105-0475

BBVA Compass
c/o Liz Boydston
K&L Gates
1717 Main St., Suite 2800
Dallas, TX 75201

Ad Hoc Group of Creditors
c/o Stacy A. Lutkus
321 Great Oaks Blvd.
Albany, NY 12203-5971