David W. Elmquist
REED & ELMQUIST, P. C.
501 N. College Street
Waxahachie, Texas 75165-3361
(972) 938-7339
(972) 923-0430 (Fax)
E-mail: delmquist@bcvlawyers.com
Counsel for Diane G. Reed, Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: <br><br> THE LASALLE GROUP, INC., <br><br> Debtor. | CASE NO. 19-31484-SGJ-7 |
| DIANE G. REED, Chapter 7 Trustee, <br><br> Plaintiff, <br><br> v. <br><br> TIB – THE INDEPENDENT BANKERSBANK, <br><br> Defendant. | Adversary Proceeding No. _____ |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS TO TIB – THE INDEPENDENT BANKERSBANK

**COMES NOW** DIANE G. REED, Chapter 7 Trustee ("Plaintiff"), who files this her *Complaint to Avoid and Recover Transfers* (the "Complaint") against TIB – The Independent BankersBank ("TIB") and to disallow any alleged claims held by Defendant in connection with the above-styled bankruptcy case pursuant to, *inter alia*, 11 U.S.C. §§ 548, 550, 502, and 544 in the above-captioned adversary proceeding. In support of this Complaint, Plaintiff alleges upon information and belief as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1334.

2. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (H) and (O). Plaintiff hereby consents, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with the Complaint.

3. Venue over this Complaint, as well as the Debtor's Chapter 7 case, is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, and Local Rule 7001-1 of the Local Rules for the Bankruptcy Courts for the Northern District of Texas (the "Local Rules").

4. The statutory and legal predicates for the relief sought herein are 11 U.S.C. §§ 502, 544, 548 and 550 of the United States Bankruptcy Code (the "Bankruptcy Code"), and Rules 3007 and 7001 of the Bankruptcy Rules.

## PROCEDURAL BACKGROUND

5. On or about May 2, 2019 (the "Petition Date"), The LaSalle Group, Inc. ("Debtor" or "LaSalle") filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code.

6. On or about September 16, 2020, the Court granted a motion to convert this case from a Chapter 11 proceeding to one under Chapter 7 [*see* Docket No. 780]. Thereafter, Plaintiff was appointed as the Chapter 7 Trustee for the Debtor under 11 U.S.C. § 702.

## THE PARTIES

7. Pursuant to Bankruptcy Code sections 502, 544, 547, 548, 550, and 704(a), Plaintiff is Diane G. Reed, in her capacity as the duly appointed Chapter 7 Trustee for LaSalle, and she therefore is authorized and has standing to pursue the claims alleged in this Complaint.

8. TIB is a Texas state financial institution, and its principal place of business is in Dallas, Texas. It may be served through its registered agent, Michael G. O'Rourke, 11701 Luna Rd., Farmers Branch, TX 75234.

## FACTUAL BACKGROUND[1]

**The LaSalle Group, Inc.**

9. LaSalle is a Texas corporation based in Irving, Texas. LaSalle, along with certain of its subsidiaries and affiliates, designed, developed, built, and owns interests in memory care assisted living communities designed specifically for people with Alzheimer's and other forms of dementia. The communities operate under the name Autumn Leaves®. LaSalle is a holding company for numerous wholly owned, non-debtor subsidiaries and affiliates. LaSalle directly and indirectly owned interests in forty-one (41) memory care assisted living communities (collectively, the "Memory Care Facilities") located in Texas, Illinois, Georgia, Florida, Kansas, Missouri, Oklahoma, South Carolina, and Wisconsin.

**Facility Management**

10. The Memory Care Facilities entered into management agreements with a LaSalle affiliated management company called TLG Family Management, LLC ("TLGFM") to provide management services for the day-to-day operations of the Memory Care Facilities. The Memory

---

[1] Unless otherwise indicated, all of the factual allegations in the Factual Background portion of this Complaint are based on the Trustee's information and belief.

Complaint to Avoid and Recover Transfers

Care Facilities are obligated to pay TLGFM 5% of their gross revenues as a management fee, plus a 2% marketing and accounting fee for a total of 7%, plus the reimbursement of certain expenses, including allocated employee-related expenses as described above.

**Cash Management**

11. Rents were collected from residents in three different manners: (i) via credit card; (ii) via ACH, and (iii) via check issued by the resident or responsible party. Credit card payments were deposited into LaSalle's merchant service bank account and then transferred to operating account of the facility where the resident resides. ACH collections were deposited into TLGFM's ACH clearing account then transferred to the operating account of the facility where the resident resides. Checks were deposited directly into the operating account of the facility where the resident resides.

**Source of Revenue**

12. As previously described, LaSalle owns and developed memory care facilities and by and large is a pass-through entity with no significant independent source of revenue. LaSalle received development fees and a return of capital and any operating/ working capital loans upon sale of the facility.

**Mitchell Warren's Ownership of the LaSalle Group and TLG Family Management LLC**

13. Prior to the filing of its bankruptcy Petition on May 2, 2019 (the "Bankruptcy Petition Date"), Mitchell Warren ("Mr. Warren") was the President and/or CEO and sole owner of both LaSalle and TLG Family Management, LLC ("TLGFM"). TLGFM is an "affiliate" of LaSalle as defined in Bankruptcy Code § 101(2). As a result of their common ownership LaSalle and TLGFM (i) borrowed or shared employees, (ii) comingled accounting and finances, and (iii) operated common businesses.

Complaint to Avoid and Recover Transfers

14. Mr. Warren is an insider of LaSalle by virtue of his ownership interest and role as president and/or CEO of LaSalle.

15. The financial difficulties that led to the Debtor's decision to file the chapter 11 case developed over several years. In the Declaration in Support of First Day Motions (Dkt. 13), Karen Nicolaou, the Debtor's chief reorganization officer, disclosed that "[a] surge in construction of assisted living facilities in recent years has created a supply-demand imbalance resulting in greater competition for residents and lower rates. This market dynamic has significantly impacted LaSalle and its affiliated entities (collectively the "Autumn Leaves Group") from a cash flow perspective. The Autumn Leaves Group has struggled with occupancy rates in certain markets which has significantly impacted revenue and cash flow. . . . "current market conditions have significantly impacted occupancy and rental rates, especially in certain ultra-competitive markets."

16. The Debtor retained the services of restructuring consultants, Bridgepoint and/or Harney Partners, in early 2018. On information and belief, negative cash flow inability to satisfy current and ongoing liabilities continued, and on May 2, 2019 the Debtor filed its chapter 11 petition.

17. In addition to the financial distress, apparent negative cash flow, and reduction in occupancy rates, public records indicate that as of the Petition Date, there were already approximately thirty (30) lawsuits pending against LaSalle on account of delinquent debt and lease liabilities as well as suits pending against LaSalle by vendors and other creditors arising from unpaid and past due obligations.

**Payments**

18. According to the Statement of Financial Affairs filed by the Debtor on or about May 30, 2019, TIB received from February 1, 2019 to April 29, 2019 the following payments totaling $500,000:[2]

| Location in SOFA | Date | Amount | Purported Reason for Payment |
|---|---|---|---|
| 3.42 | 4/29 | $30,000 | Unsecured Loan Repayment |
| 3.43 | 4/24 | $20,000 | Unsecured Loan Repayment |
| 3.44 | 4/22 | $20,000 | Unsecured Loan Repayment |
| 3.45 | 4/17 | $10,000 | Unsecured Loan Repayment |
| 3.46 | 4/15 | $30,000 | Unsecured Loan Repayment |
| 3.47 | 4/10 | $30,000 | Unsecured Loan Repayment |
| 3.48 | 4/4 | $30,000 | Unsecured Loan Repayment |
| 3.49 | 4/2 | $30,000 | Unsecured Loan Repayment |
| 3.50 | 3/26 | $10,000 | Unsecured Loan Repayment |
| 3.51 | 3/20 | $55,000 | Unsecured Loan Repayment |
| 3.52 | 3/19 | $30,000 | Unsecured Loan Repayment |
| 3.53 | 3/14 | $20,000 | Unsecured Loan Repayment |
| 3.54 | 3/7 | $40,000 | Unsecured Loan Repayment |
| 3.55 | 3/5 | $10,000 | Unsecured Loan Repayment |
| 3.56 | 3/1 | $25,000 | Unsecured Loan Repayment |
| 3.57 | 2/26 | $25,000 | Unsecured Loan Repayment |
| 3.58 | 2/22 | $5,000 | Unsecured Loan Repayment |
| 3.59 | 2/19 | $20,000 | Unsecured Loan Repayment |
| 3.60 | 2/15 | $10,000 | Unsecured Loan Repayment |
| 3.61 | 2/11 | $20,000 | Unsecured Loan Repayment |
| 3.62 | 2/7 | $20,000 | Unsecured Loan Repayment |
| 3.63 | 2/1 | $10,000 | Unsecured Loan Repayment |

19. Additionally, a review of the Debtor's YARDI accounting system reveals additional transfers to TIB dating back to November 28, 2018. These payments, combined with the $500,000 in payments listed above, total $830,441.95 (the "Transfers").

20. The Transfers were made to TIB to pay down the monthly balance on a corporate purchase card account (the "P-Card Account") in the name of TLGFM. The P-Card Account was

---

[2] Dkt. No. 109 at pp.20-23.

established pursuant to a contract between TLGFM and TIB (the "P-Card Contract"). LaSalle was not a party to the P-Card Account or the P-Card Contract.

## PLAINTIFF'S CLAIMS FOR RELIEF

### First Claim for Relief – Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)

21. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

22. On information and belief, the Transfers made to Defendant were made within two (2) years of the Petition Date, and were made either: (a) with actual intent to hinder, delay or defraud Debtor's creditors; or (b) the Debtor received less than reasonably equivalent value in exchange therefor; (i) on a date when Debtor was insolvent or where Debtor became insolvent as a result thereof; (ii) while Debtor was engaged, or about to engage, in a business or transaction for which any property or capital remaining with the Debtor was unreasonably small; (iii) when Debtor intended to incur or believed Debtor would incur debts beyond the Debtor's ability to pay as such debts matured.

23. Pursuant to section 548(a)(1) of the Bankruptcy Code, the Transfers are avoidable, and the Trustee is entitled to judgment in her favor and against the Defendant avoiding the Transfers.

### Second Claim for Relief – Recovery of Avoided Transfers – 11 U.S.C. § 550

24. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

25. Plaintiff is entitled to avoid the Transfers pursuant to sections 544 and 548(a) of the Bankruptcy Code.

26. Defendant was the initial transferee of the Transfers, the immediate or mediate transferee of such initial transferee, or is the person for whose benefit the Transfers were made.

27. Accordingly, pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from the Defendant the Transfers, plus interest thereon to the date of payment and the costs of this action.

### Third Claim for Relief – Disallowance of all Claims – 11 U.S.C. § 502(d) and (j)

28. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

29. Defendant is a transferee of transfers avoidable under sections 544 and 548 of the Bankruptcy Code, which property or its equivalent is recoverable under section 550 of the Bankruptcy Code.

30. Defendant has not paid the amount of the avoidable transfers or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

31. Pursuant to section 502(d) of the Bankruptcy Code any and all claims of the Defendant against the Debtor or its estate, if any, must be disallowed until such time as the Defendant pays to Plaintiff an amount equal to the aggregate amount of the avoidable transfers, plus interest thereon and costs.

32. Pursuant to section 502(j) of the Bankruptcy Code any and all claims of Defendant against the Debtor or its estate previously allowed by the Debtor must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the avoidable transfers.

### Fourth Claim for Relief – Avoidance/Recovery of Fraudulent Transfers – Tex. Bus. & Comm. Code Chapter 24 & Bankruptcy Code § 544

33. Plaintiff incorporates all the preceding paragraphs as if fully re-alleged herein.

34. Under section 544 of the Bankruptcy Code Plaintiff is vested with the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by actual or hypothetical creditors of the debtor at the time of the

8

commencement of the case, and these rights include the rights to avoid voidable transfers under applicable state or non-bankruptcy law.

35. One or more of the underlying obligations to Defendant and/or the Transfers made to Defendant in alleged payment thereof and identified herein, was made within four (4) years of the Petition Date, and, on information and belief, was made: (a) with actual intent to hinder, delay or defraud one or several of Debtor's creditors; or (b) without Debtor receiving reasonably equivalent value in exchange therefor, and the Debtor (i) was engaged, or about to engage, in a business or transaction for which any property or capital remaining with the Debtor was unreasonably small in relation to the business or transaction; or (ii) intended to incur or believed Debtor would incur debts beyond the Debtor's ability to pay as they became due; or (c) without receiving a reasonably equivalent value in exchange for the transfer or obligation and the Debtor became insolvent as a result of the transfer or obligation..

36. In accordance with the Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COMM. CODE §§ 24.005(a) and 24.006(a) and (b) the Transfers described above are "fraudulent."

37. Plaintiff is entitled to request, and prays for, the relief provided under and in accordance with TEX. BUS. & COMM. CODE § 24.008.

38. In addition, in any proceeding under TEX. BUS. & COMM. CODE § 24.013 Plaintiff is also entitled to, and hereby prays for, the recovery of costs and reasonable attorneys' fees as are equitable and just.

39. In addition, to the extent permitted under TEX. BUS. & COMM. CODE § 24.008(a)(3)(C), TEX. CIV. PRAC. & REM. CODE § 41.003, and any other applicable Texas law, Plaintiff prays for the recovery of exemplary damages for Defendant's fraudulent conduct.

WHEREFORE, Plaintiff respectfully requests that this Court award judgment in favor of Plaintiff and against Defendant avoiding the transfers as requested herein, directing the Defendant to return to Plaintiff the amount of the Transfers (together with interest, costs and expenses of this action, including without limitation attorneys' fees or other relief) to the fullest extent permitted by law, disallowing any claims by Defendant against Debtor's estate, and granting such other and further relief as this Court may deem just and proper.

Dated: September 16, 2021

Respectfully submitted,

**REED & ELMQUIST, P. C.**

By: _David W. Elmquist_
David W. Elmquist
State Bar No. 06591300

501 North College Street
Waxahachie, Texas 75206
Telephone: (972) 938-7339
Facsimile: (972) 923-0430 (Fax)
E-mail: delmquist@bcylawyers.com

*Attorneys for Diane G. Reed, Chapter 7 Trustee*

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>DIANE G. REED, Chapter 7 Trustee | **DEFENDANTS**<br>TIB - THE INDEPENDENT BANKERSBANK |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>David W. Elmquist<br>Reed & Elmquist, P.C.<br>501 N. College Street<br>Waxahachie, Texas 75165   (972) 938-7339 | **ATTORNEYS** (If Known)<br>H. Joseph Acosta<br>Dorsey & Whitney LLP<br>300 Crescent Court, Suite 400<br>Dallas, Texas 75201   (214) 981-9970 |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☑ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor ☐ Other<br>☐ Trustee |

Avoidance and recovery of fraudulent conveyances pursuant to 11 U.S.C. Sections 548(a)(1) and 550(a), and avoidance and recovery of fraudulent transfers pursuant to Tex. Bus. & Comm. Code Chapter 24 and 11 U.S.C. Section 544.

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☑ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ To be determined by the Court |
| Other Relief Sought   Disallowance of claims, exemplary damages, interest, costs and attorney's fees. | |

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>The LaSalle Group, Inc. | | BANKRUPTCY CASE NO.<br>19-31484-SGJ-7 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | | DIVISION OFFICE<br>Dallas | NAME OF JUDGE<br>Jernigan |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
|  |  | |  |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ David W. Elmquist | | | |
| DATE<br>September 16, 2021 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>David W. Elmquist | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.